*Ex parte* M'COLLUM.

Before the    *A. R. Tiffany, Esq.* one of the Justices of the Peace of
court will de-
clare an act of the county of *Wayne*, rendered judgment, in *June* last, in fa-
the legislature vour of the *relator* against one *Souls*, for 15 dollars 64 cents.
unconstiution-
al, a case
should be presented in which there is no rational doubt.

On the 11th of *April*, 1823, an act passed, creating the county of *Wayne*, out of certain
towns belonging to the former counties of *Ontario* and *Seneca*, with a proviso, that the
justices of the peace, who had already been appointed for those towns, while they belong-
ed to *Ontario* or *Seneca*, pursuant to the 7th section of the 4th article of the constitution,
should, by virtue of the act, be and remain justices of the new county for the same term
and with the same powers, in the towns in which they should respectively reside in *Wayne*,
as they would have had in the counties of *Ontario* and *Seneca*, if the act had not passed :
*held*, that this provision was constitutional. (Vid. *Laws, sess.* 46, *ch.* 138, *s.* 3.)

The legislature have power to enlarge, or contract the territorial jurisdiction of justices
of the peace ; though they have no power absolutely to deprive them of their offices.

The power to alter their territorial jurisdiction necessarily arises from the constitutional
power of creating new counties. (*Art.* 1, *s.* 7.)

On the 22*d* of *July* thereafter, the relator applied to him for an execution, which he refused to issue, alleging as a reason, that he had been advised that the provisions of the law creating the county of *Wayne*, authorising the Justices of *Ontario*, who resided in the county of *Wayne* at the time of its erection, to act as Justices of the latter county, was unconstitutional ; that he, being one of them, and deriving his power to act from that provision in the law, would be liable in an action of trespass to any person whose body or property should be taken by virtue of process issued by him.

*Talcott*, (Attorney General) at the last term, moved for a mandamus, commanding him to proceed and issue execution.

*J. C. Spencer*, contra, contended, that the act organizing the county of *Wayne*, (46*th sess. ch.* 138, *p.* 158,) was unconstitutional, so far as it respected the Justices therein authorized to act for that county, for the following reasons :

1. The act violates the right secured to the citizens of *Wayne* county, by the constitution, to appoint Justices, through their Supervisors and Judges. Article 4, *s.* 7, of the constitution, prescribes the mode of appointing Justices *for each county*, and the language of the article is as explicit in declaring Justices to be officers of *the county* for which they are appointed, as the other parts of the constitution are in respect to Sheriffs and Clerks being officers of the county. They are, therefore, county officers, and their jurisdiction must be confined to the county for which they are appointed. By the provision in question, the Supervisors and Judges of *Wayne* acquired a right the moment the county was organized, and they were in official existence, to appoint Justices for that county, unless the power was withheld by suspending the complete organization of the county. The act in question organizes the county of *Wayne* fully and perfectly, but declares that " *every person* who shall have been appointed a Justice of the Peace, in and for the counties of *Ontario* and *Seneca*, in the manner prescribed by the constitution, and who shall now reside within the county of *Wayne*, shall, *by virtue of this act*, be and remain a Jus-

tice of the Peace in and for the county of *Wayne*, for the same time, and with the same powers and authority, in the town in which he shall reside within the county of *Wayne*, as he would have had in the counties of *Ontario* and *Seneca*, if this act had not been passed.". It is obvious that *persons* are here appointed Justices *by the act*, and that their official description is a mere designation of the persons thus appointed. And if it be considered a mere continuance of those already in office, it amounts to the same thing as an appointment; for without it, they could not act in the new territory. Besides, the extension of their jurisdiction is an original act, and not a continuance of former powers.

It may be contended that this clause is the same in substance and effect, as if it had designated the persons appointed by their names, or by any other description. And if this be its true construction, then it is denied that the legislature have the power to appoint Justices at all, or any other officers than those whose appointment is expressly given to it by the constitution, among which, it is conceded, that Justices are not included : And the exercise of the power assumed in the act, debars the Supervisors and Judges of *Wayne* from appointing Justices in the manner prescribed by the constitution. The legislature might, in the same way, declare that the Sheriff of *Ontario*, residing in the county of *Wayne*, should be Sheriff of that county, and thus deprive the people of the power of electing one. No difference between the two cases can be perceived.

2. The clause in question gives jurisdiction to Justices appointed *for Seneca county*, over a part of the county of *Ontario*, for which they never were appointed; and so *vice versa*. The section of the constitution before quoted expressly declares, that Justices shall be appointed *for the county*, and the office and duty of Justice, as well by common law as by statute, have always been confined to the county. If a town be added to a county, it will still remain the same county, the same artificial being, similar to a corporation, although its parts may be different. But in this case, there was no county of *Wayne*, and nothing to which an addition could be made. If the powers of Justices of *Seneca* may thus be ex-

tended into *Ontario* or *Wayne*, it is not perceived why they might not be extended to *New-York* or *Suffolk*.

3. The act makes the same persons Justices both of *Wayne* and *Ontario* counties, and also of *Wayne* and *Seneca*. That the persons appointed Justices in *Ontario* cannot be removed by an act of the legislature, it is presumed, will be admitted. When in *Ontario*, therefore, the same person will be a Justice of that county, who will also be a magistrate of *Wayne*, by stepping over the boundary line.

*Talcott*, in support of the motion. For the purposes of this question, it is well to understand the nature of the office which *Tiffany* held. A Justice of the Peace seems to be considered, by the other side, as a mere county officer; and this is undoubtedly true as it respects his territorial jurisdiction. But his *powers* are general.

The object of the constitution was to fix the number of Justices, and limit the duration of the office. It also confided the power of appointment to a county board, which had been exercised by all the original counties, when the act in question passed. On exercising this power, in the manner traced out by the constitution, the Justices became officers for four years, wherever the legislature might think proper to place them. This is not, as pretended, invading the rights of the people. So far from this, it is saving their rights. A new county was erected, and unless the Justices had been retained, there would be ground for complaining that they were legislated out of office, or left to the alternative of removing into the old county; there to swell the number of Justices beyond that allowed by law.

We are told that the Justices of *Wayne* are no less officers of *Ontario* or *Seneca*—that the act makes them officers of three counties. But it does nothing more than has been done by almost every preceding legislature. It does no more than is done when a town is detached from one county and annexed to another. Was it ever questioned, that in the last case, the Justices of the county, to which the town is added, could exercise jurisdiction over it? Yet the same objection may be made. The town thus attached has no

voice in appointing these magistrates. It does not partici-
pate in the election of the Sheriff; and does it follow that
he, for that reason, has no right to execute process in the
new town ? It is but adding territorial jurisdiction on the
one hand, and lessening it on the other. So here: the ter-
ritorial jurisdiction of the *Ontario* and *Seneca* Justices is
contracted on one side and enlarged on the other.

If this act be unconstitutional and void, the consequences
will be most serious. Upon the erection of new counties,
they must remain for some time destitute of their most im-
portant magistrates. The Judges and Supervisors cannot
be created *in futuro ;* yet there is no other power who can
appoint, and the new county must remain vacant. Suppose
*Ontario* had been divided in the centre—one half made into
*Cumberland* county, the other *Wayne*—and the old Justices,
belonging to each, retained and limited to the new county :
can it be properly said, " they are legislated out of office ?"
It is merely changing the name of the territory.

What is a county considered in its corporate capacity ;
and who represents it as such ? The Supervisors of the
county. They are, *quasi,* a corporation. (*Denton* v. *Jackson,*
*2 John. Ch. Rep.* 325.) When a town is attached to this
county, the Supervisor of that town becomes, *ipso facto,*
an officer of the county : otherwise the town must become
vacant. There is no power to provide for a choice by a
special town meeting. The act erecting the county of
*Tompkins,* (*sess.* 40, *ch.* 189) was passed *April* 7, 1817, just
after town meeting. This county was made up of towns ta-
ken from the counties of *Cayuga* and *Seneca,* and went into
existence immediately on passing the act. Yet there is no
provision for *choosing Supervisors* in the new county. There
is, notwithstanding, a provision in the 14th section, that a
bond for building a court-house should be given to the Su-
pervisors by the first day of *May,* 1817, or that the county
should revert and be re-annexed to the old counties of *Cay-
uga* and *Seneca.* Now, on going back to these counties,
what would have become of the *Tompkins* Supervisors ?
Would they not have been reinstated as members of the

respective corporations to which they belonged when cho-
sen ?

It is not only settled in practice, but the constitution pro-
vides, that new counties may be erected; and it follows, of
necessity, that the legislature may provide for the administra-
tion of justice, by officering such new counties as they shall
erect.  It is a power incident to that of creating new coun-
ties.  The legislature had no more power under the old than
the new constitution.  They could no more control the
council of appointment, under the former, than the appoint-
ing power created by the latter.  Yet they have uniformly
exercised the power which is now drawn in question.  In
erecting new counties, they have always provided that the
change should not affect judicial proceedings, civil or crim-
inal.  They have done this because the necessities of soci-
ety required it.  To construe the constitution with so much
strictness as to forbid the exercise of this right, would impair
the great object of its creation, which is the administration
of justice.  It would be subjecting it to a rule of construc-
tion more strict than we apply to a special plea or a statute.

Various provisions, like the one under consideration, are
familiar in practice.  The 25 dollar act provides, that a Jus-
tice may issue execution, at any time within 30 days after
his removal from office.  This is on the same ground—the
publick good.  What, let it be asked, is to become of the
paupers of the new county, thus left, as is contended, without
Justices to provide for them ?  Are they to perish in the
streets ?

The constitution provides a general mode of appointment
for the whole state ; and that, when appointed, the Justices
shall hold for four years.  The same constitution recognizes
the power of creating new counties.  The act should be so
construed as to give effect to both these provisions.

If the gentleman will have it so, let these Justices, taken
from *Seneca* and *Ontario*, officiate in the old counties to
which they respectivly belonged before the erection of
*Wayne*.  It is said that *Tiffany* is still a Justice of *Ontario*.
Be it so, for the purposes of this question.  He is not, for that
reason, excused from acting.  He has rendered a judgment.
Let him issue his execution as a Justice of *Ontario*.

It may be said, that provision might have been made for appointing the Justices, as in the new county of *Yates*, and a time fixed for that purpose ; but where is the magistracy of the new county, until the time for their appointment has arrived ? The old Justices go on in the mean time, and in *May*, the period fixed for the appointment of new Justices, the old ones are discontinued. By the erection of a new county, they are authorized to act there *pro tempore*. The creation of the county gives them this power *ex vi termini*. Under the old constitution these appointments could be made at any time. It is now otherwise ; and the new county must be vacant, at least, for a time, unless the legislature have power to continue the old Justices, and authorize them to act till new ones are appointed.

Even admitting this to be a doubtful point, the multitude of evils which would flow from considering the act unconstitutional, ought to determine the question in favour of its validity. The presumption is in favour of its constitutionality. " It is not to be presumed that the federal or state legislatures will pass laws to deprive citizens of rights vested in them by existing laws." (Per *Chase, J.* in *Calder* v. *Bull*, 3 *Dall.* 394.) And the Supreme Court of the United States have declared, on more than one occasion, that, in no doubtful case, would they pronounce a legislative act to be contrary to the constitution. (Per *Ch. J. Marshall, in Dartmouth College* v. *Woodward*, 4 *Wheat. Rep.* 625.)

*Spencer*, in reply. It is denied that Justices are in any respect officers of towns. The act of 1818, merely prescribed the number which should be appointed in each town ; or if a different construction could be given to the act, it was repealed by the constitution, which makes them officers of the county. But, in truth, they never have been officers of towns, and their duties have not been confined to the towns for which they were appointed. If they had been, they would be incompetent to act in another town ; and yet has the objection ever been heard in this Court or elsewhere, to a judgment, rendered by a Justice out of the town in which he resided ? or to a conviction by special sessions, that any of the Justices composing it, acted out of their town ?

It is said the Supervisors of the respective towns go with their towns into the new county to which those towns may be annexed. This is not conceded ; but if it were so, there is no analogy, because they are strictly town officers, and they have not a single duty to perform *as* county officers. They are delegates from their respective towns in the board of Supervisors.

The case stated on the other side, arising under the act erecting the county of Tompkins, may be as stated, but its application is not perceived. At all events, if that were an unconstitutional provision, it cannot help this case ; and it is not conceived to be the duty of counsel, on this occasion, to vindicate either the wisdom or the constitutionality of all laws that have been passed.

It is contended on the other side, that Justices, being appointed for four years, they must remain such in the new county, during that time, or they must remove into some town of the old county, and thus the act limiting their number in each town would be violated. But it is conceived, that if Justices have a right to act in any part of the county for which they were appointed, their acting out of their town, or removing into another, cannot violate the act, which relates merely to their *appointment*—prescribing simply, that four Justices shall be *appointed* in each town, and containing no provision whatever, restricting the exercise of their offices to the towns in which they reside at the time of their appointment. And again, being a mere legislative act, it would be competent for the legislature to repeal or modify it at pleasure. An act dividing an old county, might leave the Sheriff of that county in the section set off ; he would not, therefore, be Sheriff of the new county, nor could the legislature make him so ; but on returning into the county for which he was elected, he would resume his office.

But it is said that the act in question does nothing more than former acts of the legislature, which annex the towns of one county to another county ; and that the same objections made to this act would apply to those, and would establish, that Justices in one county could not exercise jurisdiction in that to which they had been annexed ; and that the

ALBANY,
October, 1823.

EX PARTE
M'COLLUM.

Justices of the latter county could not exercise jurisdiction over the towns thus annexed, because they were not included in the territory for which such Justices were appointed, and thus those towns would be without a magistracy. There are several answers to this argument. *First.* It is denied that any act can be produced, (until the present one) by which Justices of one county are authorized to act in another. Instances of detaching towns from one county and annexing them to another, are frequent ; but the legal effect of such annexation on the Justices residing in those towns, has never been determined by our Courts, nor declared by the legislature. The argument on the other side is, therefore, only stating the very question now before the Court, in another shape. *Second.* There is no real difficulty in the case, for a county being like a corporation, it may be added to or diminished, without affecting its identity ; it remains the same county, its officers have jurisdiction over the county, and the Justices, like the other officers, the Sheriff, Judges, &c. would exercise it over the towns annexed. But in the present case, the difficulty is, that there are no Justices who ever had jurisdiction in the county of *Wayne ;* if there had been, they would have retained their authority over the county notwithstanding other towns had been added to it. But it is the very essence of our objection, that Justices of *Seneca,* residing in *Galen* and *Wolcott,* are made Justices of the whole county of *Wayne,* and have jurisdiction given them over a part of a distinct county for which they were never appointed. We contend, that if *Galen* and *Wolcott* had been simply added to the county of *Ontario,* the Justices of those towns would not and could not, without a new appointment, have been magistrates of *Ontario ;* but that those towns would have fallen within the general jurisdiction of the officers of *Ontario.* And we suppose the circumstance of these towns being annexed to a county which had no Justices, could not alter the case, nor give the Justices residing in them any power in that county. And the fact, that in the hundreds of laws which have annexed towns in one county to another, the legislature has never attempted to give the Justices, residing in those towns, jurisdiction

in the county to which they were annexed, is a strong legis- lative sanction of the correctness of the position we take.

The argument, however, which seems to be most relied upon on the other side, is one derived from a supposed necessity for such a provision as is contained in the present act, in order to prevent an *interregnum ;* for, without it, it is said every new county organized under the present constitution, must remain without a magistracy for some time.

This argument seems to concede, that the power assumed by the legislature, in the present instance, is a violation of the right of the people of *Wayne* to appoint their own Justices. If, indeed, it be so, that a county cannot be organized without either violating a provision of the constitution on the one hand, or, on the other, without leaving the citizens of such county exposed to all the inconveniences of being without a civil and criminal jurisdiction; then the true conclusion would seem to be that a new county cannot be organized at all. This conclusion would be much strengthened by the course of the argument adopted by the Attorney General, in the opinion given by him to the Assembly in 1822, that new counties could not be erected out of different senatorial districts, because such an act would infringe that provision of the constitution, which declares that the senate districts shall be unalterable except at particular times.

But the *necessity* of such a provision is denied, and, of course, the consequence attempted to be derived from it. The whole subject of organizing a new county is within the power of the legislature ; it may create a county complete and perfect in all its parts, or it may create one in part, and suspend certain of its functions and powers for a limited or an indefinite period. The counties of *Hamilton,*(a) *Oswe-* (a) Laws, *go*(b) and *Cattaraugus,*(c) are instances of the exercise of 39 sess. chap. cxx. this power ; for in the acts organizing them, certain rights (b) Laws, 39 sess. chap. which would have appertained to them, as counties, were re- xxii. served by the legislature, until certain events had occurred. (c) Web- ster's edition of And so in the present case, inasmuch as the *time* of appoint- Laws, vol. 5, ing Justices is entirely in legislative discretion, the act might p. 266. have directed their appointment at an early day, and might

have declared that, until that day, the jurisdiction of Courts and officers in the respective counties of *Ontario* and *Seneca*, should continue over their respective portions of territory included in the new county. This would have been a reservation which it was competent for the legislature to make, and what is remarkable, precisely such a reservation is contained in the act in question. In the act erecting the county of *Yates*, the course suggested was pursued, and the rights of the people of that county to appoint their own magistrates were preserved. There can be no pretence, then, for the suggestion of its being necessary to preserve civil and criminal jurisdiction over *Wayne*, to pass the section complained of. There was a plain and direct course before the legislature, which it had just adopted in the case of *Yates* county; and it had prevented all danger of an *interregnum*, by continuing the jurisdiction of the officers of the old counties.

But in addition to this, we have, on this point, a most clear, satisfactory and decisive legislative construction of the power in question. For it is agreed on all sides, that the power of the legislature would be the same in this respect, under the old as under the new constitution. And we aver, that in the multitude of acts which have been passed erecting new counties, not one is to be found authorizing the Justices, or any other officers of the old counties, to hold the same offices in the new counties. We have not only this negative proof, but we have affirmative evidence of the sense of almost every legislature since the year 1791, on this subject. By a reference to the acts erecting new counties, it will be seen, that in every one of them, with scarcely an exception, the following is introduced as *a proviso :* "that nothing in this act contained shall be construed to affect any suit or action already commenced, or *that shall be commenced,* before the third Tuesday of May next, so as to work a wrong or prejudice to any of the parties therein, or to affect any criminal or other proceedings on the part of the people of this state ; but all such civil and criminal proceedings shall and may be proceeded to trial, judgment and execution, as if this act had never been passed." (2 *Greenleaf's edition of*

ALBANY,
October, 1823.

EX PARTE
M'COLLUM.

*laws,* 338.) [The counsel here referred to about 30 acts of the legislature passed at different times, containing the *proviso* above quoted.]

These laws prove the opinion of the legislature on the point in issue, that the very act of severing a portion of one county from the rest, would exempt that portion from the jurisdiction of the officers of the old county, unless an express reservation was contained in the act itself. And to make the case still stronger, and to exhibit the application of the laws cited to the present question, let it be remarked, that in all these laws, the legislature does not assume to confer any powers, to grant any jurisdiction, but the reservation of jurisdiction is introduced as an *exception* to the grant of the rights of a county—is always a *proviso,* and a qualification of the powers granted. But in the act complained of, notwithstanding it has precisely such a *proviso* as the laws quoted, yet it also assumes to give, grant and confer jurisdiction on certain persons designated, to be Justices in the new county, and gives them powers and a jurisdiction which they did not before possess. With such affirmative evidence of the sense of so many legislatures, and in the absence of a single instance in the whole range of our history, where the legislature has attempted to exercise the power of appointing Justices, or of continuing them as such, in the new county, it is conceived there can be no dispute as to legislative construction.

Let it not be said, that this continuing of the old Justices for four years in the new county, may also be considered a reservation and qualification of the rights granted. Because, although such an exception might be allowed, from the necessity of the case, for a short period, yet the power of making it ought not and cannot, be so enlarged as to extend beyond the time when the reason of it has ceased to exist, nor so enlarged as to deprive a co-ordinate branch of the government, or the people, of any rights. If such a provision as this can be justified as an exception, then the legislature might reserve, that the old officers should be in power 20 or 30 years, or any other period, or that the legislature should always have the appointment of Justices for that county. Like ev-

ery other power grounded on necessity, it is to be exercised only when the necessity exists, and to cease with it. And this provision is entirely different in principle from those quoted, which retain, generally, the jurisdiction of the Courts and officers of a county over a portion of it, in which at the time they possess such a jurisdiction, for a limited period, and which, even during that period, do not prevent the exercise of any other powers granted by the constitution. The necessity of such a provision as this, so different from the others quoted, it is conceived, has been shewn not to exist.

We are asked, if a county is divided and new names given to both the new parts, what becomes of the Justices of the old county ? It is conceived that the supposition of improbable cases, creating difficulties where none need to exist, is not calculated to throw much light on any question. But the answer is very obvious ; let the legislature declare which is the old county. If they omit to do so, worse consequences than the dismission of Justices will follow ; for Sheriff, Clerk, Judges, County Treasurer, and every other county officer, will have no county of which they can be officers. But such omission has not occurred and is not to be expected ; and if it should occur, it is not perceived how one legislative error can help another.

This provision cannot be called an assignment of the duties of Justices to persons as Commissioners, because the act expressly says they shall be *Justices ;* and such a refinement would enable the legislature, in all cases, to evade the provisions of the constitution, and assume the appointment of all the Justices in the state, and indeed of all other officers, by assigning their *duties* to persons designated by the legislature.

But we are asked, if the erection of a new county deprives the Justices of the old county of their power over the severed territory, how can the legislature, in any case, confer it? We contend, it cannot *confer* such power, and the question developes the true point in issue between us. The *provisos* which have been quoted from the numerous acts passed during more than thirty years, are reservations and exceptions. The acts organize the new counties only *pro tanto*, and suspend their complete organization until a future period. But

in the present case, after precisely such a reservation and such a suspense, which rendered any further provision wholly unnecessary, the act proceeds to confer new and distinct powers on the old Justices, making them magistrates and extending their jurisdiction beyond its original limits. This is an affirmative, positive grant, and clearly distinguishable from the reservations in the former cases.

With respect to the authority given to Justices to issue executions for 30 days, after they are out of office, on which some reliance seems to be placed on the other side, it is a mere regulation of ministerial acts, entirely within the power of the legislature, like the common law provision allowing Sheriffs to complete acts commenced before their removal. Justices are not authorized to render judgments after their removal, although a suit may have been commenced.

We are told, if *Tiffany* be a Justice of *Ontario*, as we contend he is, let him issue his execution as such. But the difficulty is, that he does not reside in *Ontario*, and he cannot act out of his county. And if he goes into *Ontario* to issue the execution, it must be directed to the constables of that county, and their jurisdiction has not yet been extended over *Wayne*. The defendant and his property being in that county, the execution would answer no purpose. But the application is for a *mandamus* to the Justice to issue his execution as an officer of *Wayne*.

The last remark made on the other side, that it was not the business of the counsel to show the act in question to be constitutional, but that if he had succeeded in showing it to be doubtful, it was enough—is not deemed sound in law or reason. The Court is called upon to act affirmatively; and certainly it must be satisfied of its possessing the power, before it will move, or cause others to move ; and the very concession, that it is doubtful whether the act be constitutional, should be sufficient to deter this Court from proceeding, and to prevent the Justices in *Wayne* from assuming such a questionable jurisdiction.

At the present term, the opinion of the Court was delivered by

SAVAGE, Ch. J. A motion is made, that a *mandamus* issue to *Alexander R. Tiffany*, commanding him to issue an execution on a judgment rendered by him as a Justice of the Peace of the county of *Wayne*, in favour of the relator, against *Anthony Souls.* Notice having been served on the Justice, and the defendant, *Souls*, the former shewed for cause, that he had been advised, that the act erecting the county of *Wayne*, so far as the same authorized part of the former Justices of the county of *Ontario* to act as Justices of the county of *Wayne*, is unconstitutional and void, and that he will be liable in an action, at the suit of any person, against whom he may issue an execution.

The only question for the consideration of the Court, is the constitutionality of so much of the act erecting the county of *Wayne*, as provides for the continuance in office of the Justices residing in those towns taken from *Ontario* and *Seneca*, now constituting the county of *Wayne.*

I approach this question with all that respect which is due to a co-ordinate branch of the government; and before the Court will deem it their duty to declare an act of the legislature unconstitutional, a case must be presented in which there can be no rational doubt.

Under the old constitution, Justices of the Peace were appointed to office by the council of appointment, and held their offices during the pleasure of the council. Their number was unlimited, and their residence not confined to any particular town, until the passing of the " act to limit the number of Judges of the Courts of Common Pleas and Justices of the Peace in the several counties of this state," &c. passed *March* 27, 1818. (*Sess.* 41, *ch.* 60.) By that act the number of Justices is limited to four in each town. By the amended constitution, (*article* 4, *section* 7,) the power of appointing these officers is given to the Supervisors and the Judges of the county courts, in their respective counties, and in case of their disagreement, to the Governor—the time when they are to be appointed to be fixed by law ; and they are to appoint so many as shall be equal to the number of Justices to be appointed in the several towns—recognizing the principle, that a certain number must be appointed in each

town. The same section declares, that each person appoint-
ed a Justice of the Peace, shall hold his office for four years,
unless removed in the manner particularly specified. By
the 3d section of an act regulating the time and manner
of electing general state officers, Justices of the Peace, &c.
passed *April* 12, 1822, the time appointed for choosing Jus-
tices of the Peace is the *3d Tuesday* of *February*, 1823, and
afterwards, the *1st Tuesday* of *October*, in every year. By
virtue of the constitution and laws referred to, the defendant
was duly appointed a Justice of the Peace, for the town of
*Palmyra*, in the county of *Ontario*, on the *3d Tuesday* of
*February*, 1823.

By " an act to erect a new county from parts of the
counties of *Ontario* and *Seneca*, by the name of *Wayne*,
and for other purposes," passed *April* 11, 1823, the towns
of *Wolcott* and *Galen*, in *Seneca* county, and the towns of
*Lyons, Sodus, Williamson, Ontario, Palmyra* and *Mace-
don*, and part of *Phelps*, in *Ontario* county, were erected in-
to a new county by the name of *Wayne ;* and by the 2d
*proviso* to the third section, it is provided, " that every per-
son who shall have been appointed a Justice of the Peace
in and for the counties of *Ontario* and *Seneca*, in the man-
ner prescribed by the 7th section of the 4th article of the
constitution of this state, and who shall now reside within
the said county of *Wayne*, shall, by virtue of this act, be
and remain a Justice of the Peace, in and for the county
of *Wayne*, for the same term and with the same powers and
authority in the town in which he shall reside, within the
county of *Wayne*, as he would have had in the counties of
*Ontario* and *Seneca*, if this act had not been passed."

It was contended on the argument, 1. That Justices are
county officers ; and 2. That their jurisdiction is and must
be confined to the county for which they are appointed.

Justices are undoubtedly county officers for some pur-
poses ; but their jurisdiction may be limited or enlarged by
the legislature. The constitution, (*article 1st, section* 7,)
expressly recognizes the power of the legislature to erect
new counties. *Tiffany*, and all the magistrates in the
counties of *Ontario* and *Seneca*, had been duly appointed

to office; and on the 11*th* of *April*, 1823, when the county of *Wayne* was erected, they were in possession of their offices, and not liable to be removed within four years from the 17*th* of *February*, preceding, except in the mode pointed out by the constitution. Had the legislature enacted that those offices should be vacated, they would have assumed a power given by the constitution, under certain circumstances, to a different tribunal. Had they been silent on the subject of removal, and enacted that the Judges and Supervisors should have made a new appointment, then if different persons were designated, the county of *Wayne* would have had eight persons in each town, claiming to hold the office of Justice of the Peace, when four only are authorized by law.

Had the county of *Wayne* been erected entirely from part of *Ontario*, leaving out the towns of *Galen* and *Wolcott*, the act would have been constitutional, provided the population were sufficient. What, in such a case, would have been the jurisdiction of the Justices of *Ontario* county? Could they have sent their process into *Wayne* county? Certainly not. Could those Justices, residing in *Wayne*, send their process into *Ontario*? That is not pretended. But it is said, that they are still Justices of *Ontario*; and by removing into that county, they may there exercise their offices. Should they do so, they would act in violation of the law, limiting the number to four in each town; and whether their proceedings would be valid or *coram non judice*, it is not necessary now to decide. It is sufficient for the present argument, (and this is conceded) that a removal would be necessary. That concession admits the power of the legislature to limit the territorial jurisdiction of a Justice of the Peace, which is all that is contended for in support of the act.

Had the legislature simply taken the towns of *Galen* and *Wolcott* from *Seneca*, and given them to *Ontario*, the Justices of *Ontario* would gain, and the Justices of *Seneca* would lose jurisdiction in those towns; and the Justices in those towns must of necessity become officers of the county to which they are annexed. This must be the case,

ALBANY,
October, 1823.

EX PA.·TE
M'COLLUM.

or the legislature must have power by altering the bounds of counties, incidentally, to remove the Justices from office—a power, which, if attempted to be exercised directly, would be a plain act of usurpation.

The right of the legislature to extend or limit the jurisdiction of Justices, as to the amount cognizable before them, has never been disputed. Their ·power to limit or extend their territorial jurisdiction, is, to my mind, equally clear. Should the legislature enact that Justices should have power to send their process into any county in the state, or to hear and try causes to any amount, no part of the constitution would be violated. Though such an act might be thought indiscreet, yet it would be the duty of the Court to carry it into effect. In some of our sister states, Justices have general jurisdiction ; and even with us, they have jurisdiction throughout the state for some purposes. For instance, the removal of paupers, and the apprehension of criminals, and of the putative father of a bastard child, under certain qualifications. The result is, that the jurisdiction of Justices of the Peace rests in legislative discretion, and is subject to legislative control.

By the erection of a new county from parts of *Ontario* and *Seneca*, the Justices of those counties are limited in their jurisdiction. The Justices in the new county can no longer exercise their offices in counties in which they do not reside. They are, however, entitled to hold their offices for four years, having been regularly appointed for the *towns* in which they reside. They must, therefore, necessarily be Justices within the new county. The act does not create the offices, nor appoint the officers, but merely defines the limits within which they are to act. This the legislature had power to do. The right of the people to choose their officers in the mode directed by the constitution, is not at all abridged. That right has been exercised ; and the persons chosen continue in office.

I am therefore of opinion, that a *mandamus* should issue according to the application.