Heard at the June term, 1847, before Johns, jr., Chancellor, and Judges Milligan and Hazzard. Mr. Hazzard having resigned before judgment, this case was re-argued at June term, 1849, before the Chancellor and Judges Milligan and Wootten.
The petitioners were the issue of a manumitted slave, born prior to 1810, after the act of manumission, but before the mother's term of service had expired.
The manumission was by the following clause of the will of George Moore, dated July 14, A. D. 1805, and admitted to probate August 30, A. D., 1805: — "Also, I give to my wife, Sarah Moore, one negro man called Isaac, and one negro woman called Bett, to serve her during her naturallife, and after that time to go free." The petitioners were the issue of Bett, all born after the death of George Moore, and during the life of his widow, Sarah Moore.
The court below gave judgment, (without argument) dismissing *Page 193 
the petitions, in conformity with the case of Negro Ben. Jones vs.Wootten, 1 Harr. Rep., 77; and these appeals were taken from that decision.
Mr. Layton. — The appellants, who were petitioners below, rely upon the following points of law and authorities: —
1. That property in slaves is a qualified, and not an absolute
property. That slaves are regarded by the laws of this country as human beings, having moral rights, and entitled to the protection of the laws. (Law of Slavery, 1, 2; 4 McCord Rep., 223; 2 Overton's Rep., 96; 1 Harr.Rep., 85; and the acts of assembly of this State in relation to slaves, manumission, c., (Digest 409.)
2. That the Legislature, upon principles of humanity, and of sound policy, has the power to restrain the traffic in human beings; and to provide for the emancipation of slaves; and to prescribe the mode and the terms upon which the issue of manumitted slaves should be held by their owners. (Const. U. S., art. 1, sec. 9; Laws U. S.; Acts ofAssembly of this State, prohibiting their exportation and importation,and providing for manumission, c.; 4 N. Y. Digest, 1024, secs. 2, 3; 14Wend. Rep., 209.)
3. The appellants, plaintiffs below, being the issue and descendants of a manumitted slave, are entitled to their freedom; males at twenty-five; females at twenty-one. (Dig. Del. Laws, p. 409; 1 Harr.Rep., 78, 86; Wilson's Red Book, 356, Absalom vs. Spicer; Journal of theHouse of Rep. of the State of Del., 1810, vol. 3, p. 9, Gov. Truitt'sMessage; Pennsylvania Stat., 1780; 2 Tenn. Stat., revised; 1 Dall. Rep., 467; 1 Blk. Com., 450; 1 Co. Litt., (Thomas' Edition) Villenage, p. 457,c.; Littleton, section 187, 123, a.)
4. The Constitution of the United States does not prohibit the States from passing retrospective laws generally, but only ex post facto laws,and laws impairing the obligation of contracts. (3 Dallas Rep., 391,Calder and, wife vs. Bull and wife; 11 Peters Rep. 420, Ch. River BridgeCo. vs. Warren River Bridge Co.; 2 Gallis' C. C. Rep., 204; 8 Pet. 110,Watson vs. Mercer,; 1 Bald. 74, Burnett vs. Boggs; 15 Serg. Rawle, 72;8 Wheat., 89; 2 Peters, 414, 1 Cranch, 347; 1 Gallis Rep., 105; 8 Pet.S. C. Rep., 627; Ib., 380; Ib. 523; 21 Pick. Rep., 350; Wilbur vs.Gilmore; 2 Mass. Rep., West vs. West; 16 Mass. Rep., 273, Foster vs.Essex Bank; 3 Dallas Rep. 477, Adm'rs. of Byrne vs. Stewart.) *Page 194 
The power of the Legislature to interfere with vested rights, is unlimited, except in cases specified in the Constitution. (1 Hill N. Y.Rep. 324, Butler vs. Palmer; Ib., 329; 7 Pick. Rep. 344-5; Ib., 64; 11Pet. 420; 6 Yerg. 119.)
5. That the Legislature of this State, except in cases clearly prohibited by the Constitution of the United States, or by the Constitution of this State, is the supreme legislative power; and its enactments binding. (3 Dall. 387, 395, Calder and wife vs. Bull andwife; 1 Blk. Com. 160; 4 Co. Inst.; 12 Serg. Rawle, 344.)
6. Every act of the Legislature is prima facie constitutional; and this court will not decree and adjudge a legislative act to be void, on the ground of unconstitutionality, except in a clear case. (4 DevereauxRep., 1, Holn vs. Henderson; 6 Cranch, 97, 128, Fletcher vs. Peck; 1Cow. 550, exparte McCollem.
7. The question whether a law is void for its repugnancy to the Constitution, is at all times a question of much delicacy, which ought seldom, if ever, to be decided in a doubtful case. (6 Cranch, 128; 3Dall. 386; 2 Pet. 522; 12 Wheat. 370, Maison vs. Hale; 1 U. S. Dig. (and the authorities there cited,) 553; 4 Harr. Rep., 389.) Baily vs. ThePhilad. Wil. and Balt. R. R. Co.; 3 Story's Com., 258; 4 Dallas, 14; 2Dallas, 309; 3 Dallas, 399; 1 Cranch, 137, 1 Binn. 416; 1 March., 290; 2Pet., 522; 7 Pick., 466; 13 Pick. 601; 11 Mass. Rep., 396; 11 PetersS. C. Rep., 139; 11 Wend. 329, 331, The People vs. Morris.)
Mr. Cullen. — The mother of the petitioners, under whom they severally claim their freedom, was born of a manumitted slave, before the first day of February, 1810, that is to say, some time in the year 1807 or 1808, and before the passage of the act of assembly entitled "An act concerning negroes and mulattoes," passed at Dover on the seventh day of February, A. D., 1810, (Digest 409-10.)
1. The respondent insists that the said act of assembly is not to be, and cannot be construed retrospectively, so as to divest vested rights in existence at the passage thereof. (7 Johns. Rep., 477; 3 Dall. Rep., 391, e 397; 2 Gall. Rep. 139; 1 Harr. Rep., 79.)
2. That the said act of assembly, (Digest 409-10,) nor any other act of the State of Delaware, does not emancipate or set free any of the issue or children of a manumitted slave, born before the passage thereof. [Ibid.] *Page 195 
3. That the issue or children of a manumitted slave, that is to gay, that the issue or children of a negro woman given or bequeathed to a legatee for his or her life at common law, as such, belong to the said legatee for life, and are not free or slaves for a term of years; the males until twenty-five and the females until twenty-one years of age. (Law of Slavery, 25, 26, 306.)
The Court held the cases under advisement, until the twenty-fourth of October, when they reversed the decrees below; Judge Wootten dissenting.
The decree in each case was as follows: —
And now, to wit, after hearing, c., and re-argument, c., and the same having been held under advisement and consideration by the said court here to this day, and the said court having fully considered the same, it is therefore, this twenty-fourth day of October, 1849, considered, adjudged and decreed by the said court here, that the said judgment, sentence and decree of the said Superior Court, be and the same is hereby reversed. And it appearing to the court here, after hearing the proofs and allegations of the said parties, that the said Ann Elliott, the petitioner, is entitled to her freedom, it is, therefore, considered, adjudged and decreed by the court here, that the said Ann Elliott be discharged from the service of the said Robert Twilley; and the court here do adjudge and decree that the said Ann Elliott is and shall be free and at liberty, and shall and may enjoy all the benefits and advantages that a free negro or free mulatto may or can do in this government; and the court here doth further order, adjudge and decree, that the said Robert Twilley pay the costs in this cause, in three months, or attachment.