In the Matter of the Application of CHARLES GERTUM, Appellant, for a Mandamus, *v.* THE BOARD OF SUPERVISORS OF THE COUNTY OF KINGS, Respondent.

The act of 1886 (Chap. 335, Laws of 1886), under which the town of New Lots was made a part of the city of Brooklyn, provides (§ 7) that "the several justices of the peace of said town, duly elected, qualified and acting at the time this act shall take effect, shall continue to hold their offices for the terms for which they were respectively elected," and that "the terms of office of all other officers * * * shall cease and determine at the time this act shall take effect." The act, by its terms, went into effect August 1, 1886. The relator was elected in April, 1886, to fill a term as justice of the peace for such town, commencing January 1, 1887. He qualified as such by taking the oath of office and filing his official bond by the time required by law, and in January, 1887, he performed some acts as justice. In proceedings by *mandamus* to enforce a claim for fees, rejected by the board of supervisors, *held,* that such claim was properly rejected; that it was within the power of the legislature to pass the statute in question, and the relator was thereby deprived of his office.

The provision of the state Constitution (art. 6, § 18), which provides that towns shall elect justices of the peace, whose terms shall continue for four years, cannot be construed as a limitation upon the power of the legislature to create cities and villages; it does not require the indefinite preservation and perpetuation of town organizations to enable such officers to serve out their terms, or forbid a change, if, in the judgment of the legislature, the welfare and prosperity of the community requires it.

While it is beyond the power of the legislature to abolish the office of justice of the peace in towns, or shorten their terms of office so long as the town exists, it has an unquestioned right to alter or change the limits of their jurisdiction, or abolish the town organization altogether, provided it be done in good faith and for proper constitutional objects.

Justices of the peace are town officers and have no existence as public officers beyond town organizations.

(Submitted March 16, 1888; decided April 10, 1888.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, made December 13, 1887, which denied an application of the relator for a *mandamus* requiring the Board of Supervisors of the County of

Kings to audit a bill presented by him for fees as justice of
the peace of the town of New Lots.

The facts are sufficiently stated in the opinion.

*William J. Gaynor* for appellant.   Justices of the peace
must hold office either by election at town meeting or by
appointment under the statute.   (Const., art. 6, § 18; 1
R. S. [7th ed.] 823.)   The word "and," in the statute,
should be interpreted "or."   Such an interpretation is always
resorted to when the literal interpretation would be harsh or
doubtful or bring about a severe result that the context
does not make the clear and indisputed intention.   (*O'Hara*
v. *Diver*, 2 Keyes, 558; *Rome* v. *Phillips*, 24 N. Y. 463.)
The relator's office and term of office and title to office came
from the Constitution, and, therefore, could not be abolished
or abridged by the legislature.   (Const., art. 7, § 18; *People*
*ex rel.* v. *Schiellein*, 95 N. Y. 124; *Ex parte M'Collum*, 1 Cow.
550; *People* v. *Garey*, 6 id. 643; affirmed, 9 id. 640.)   A
justice of the peace, so far as his judicial functions are con-
cerned, is a county officer, an arm of the county.   (1 R. S.
[7th ed.] 348, § 12; *Guernsey* v. *Lovell*, 9 Wend. 319; *People*
v. *Keller*, 25 Barb. 421; Chap. 109, Laws 1882, § 1; Chap.
564, Laws 1881, §§ 1, 2.)

*John B. Meyenborg* for respondent.   The legislature clearly
intended to abolish the office to which the relator was elected,
and to allow only those justices who were in full possession of
their offices to continue to serve to the end of their term.
(Laws of 1886, chap. 335, § 7; *People* v. *Morrell*, 21 Wend.
563; *Bank of Chenango* v. *Brown*, 26 N. Y. 467; *People* v.
*Flagg*, 46 id. 401.)

RUGER, Ch. J.   By section 1, chapter 335 of the Laws of
1886, the town of New Lots, in Kings county, was annexed
to, merged in, and made a part of the city of Brooklyn, and
declared thereafter to constitute a part of that city, to be
known as the Twenty-sixth ward of such city, and to be

thereafter, except as in the act otherwise provided, "subject to and governed by the same laws, ordinances, rules and regulations, and entitled to the same rights, privileges, franchises and immunities" as the said city of Brooklyn. By section 7 it was further provided, "that the supervisor of the town of New Lots, and the several justices of the peace of said town, duly elected, qualified and acting at the time this act shall take effect, shall continue to hold their offices for the terms for which they were respectively elected," and that the terms of office of all other officers  *   *   *   shall cease and determine at the time this act shall take effect." By section 16 the act was declared a public act and made to take effect August 1, 1886.

That this statute was within the constitutional power of the legislature to enact, and that it accomplished the extinguishment of the political organization known as the town of New Lots, and merged the administration of the municipal affairs of the territory, formerly comprising such town, in and subjected it to the control of the city of Brooklyn, as provided therein, is not denied, nor can it be successfully disputed. (Sec. 9, art. 8, and sec. 3, art. 3, present Constitution; *People* v. *Morris,* 13 Wend. 325; *People* v. *Morrell,* 21 id. 562.) It is claimed, however, that the relator, who was elected in April, 1886, to fill a term as justice of the peace for such town, commencing January 1, 1887, was not deprived of his office by virtue of such statute.

It is by the Constitution expressly made the duty of the legislature to provide for the organization of cities and incorporated villages, and this power can be exercised only by the creation of such bodies, from territory previously existing under some other form of civil government. It seems unreasonable to suppose that the framers of the Constitution intended by its provision, relating to the terms and elections of justices of the peace in towns, to thwart the exercise of this beneficial power, and compel the continued retention of a town organization for the mere purpose of furnishing a place for a superseded

and unnecessary officer. Such officers are the incidents only of the political existence of towns. They are provided and created for the town, and it is quite absurd to say that they continue in office after the town has ceased to exist. While the Constitution provides that towns shall elect justices of the peace whose terms shall continue for four years, there is nothing in this provision that requires the indefinite preservation and perpetuation of town organizations, to enable such officers to serve out their terms, or forbids a change of local government, if, in the judgment of the legislature, the welfare and prosperity of the community requires it.

This provision cannot be construed as a limitation upon the power of the legislature to create cities and villages. It is undoubtedly beyond the power of the legislature, by direct legislation, to abolish the office of justice of the peace in towns, or shorten their terms of office so long as the town exists, but they have an unquestioned right to alter and change the limits of their jurisdiction, or abolish the town organization altogether, provided it be done in good faith, and for proper constitutional objects. The whole force and effect of the provision in relation to justices is satisfied by enforcing it, so long as there is a town organization in existence authorized under the Constitution to elect justices of the peace, and requiring the performance of their functions in the government of the town. The effect of this legislation was, therefore, not only to deprive the territory in question of the privilege of thereafter electing justices of the peace or other town officers, but, by destroying its independent corporate existence, to abrogate its right to have justices of the peace or other officers peculiar to town organizations, except so far as they were temporarily preserved by the act.

At the time of this legislation, the town of New Lots possessed four justices duly elected, qualified and acting in such capacity, aside from the relator, and under the law was entitled to no greater number. (1 R. S. [7th ed.], § 1, tit. 1, chap. 5, 338, 345.) The relator had been elected to fill a prospective term, but he was not, at the time of the passage of the act, a

justice of the peace of that town, and before his term commenced the political existence of the town had been abrogated. His complaint, therefore, is not strictly that he has been legislated out of office, but that the town organization has not been continued so that his office might be preserved. The four acting justices, one of whom the relator expected to succeed, were expressly authorized to serve out their respective terms, but as their several terms expired the office which each filled became extinct, as the logical consequence of the political destruction of the town. This result would seem to follow, as a matter of course, from the provisions of section 12 of the same title, which provides that " justices of the peace must reside in the town for which they were chosen, and shall not try a civil cause in any other town except in cases otherwise provided for by law." (P. 348.)

In the earlier cases in this state some discussion and difference of opinion arose over the question whether justices of the peace were county or town officers. (*Ex parte McCollum*, 1 Cow. 550; *People* v. *Garey*, 6 id. 642.) These differences grew out of the mode adopted by section 7, article 4 of the Constitution of 1821, for the selection of such officers by the board of supervisors and the county judges, and the jurisdiction which they possessed in a limited degree over the county at large, but the foundation for such differences was removed by the amendment to this Constitution, adopted in 1826, which required that such justices should thereafter be elected by ballot in the several towns in such manner as the legislature should direct. The Constitution of 1846 substantially continued this mode of election. (Sec. 17, art. 6 Const. of 1846 ; amendment of 1869, § 18, art. 6.)

The section of the Revised Statutes above referred to was enacted for the purpose of carrying into effect the provisions of the amended Constitution of 1821, and specially restricted the number of justices of the peace to four in each town, and required their residence in the town for which they were chosen. Under the present provisions of law no doubt can arise but that justices of the peace are town officers and have

no existence as public officers, independent of town organizations, and so it has been frequently held. (*People* v. *Garey*, *supra*; *People* v. *Morrell*, 21 Wend. 563.) Cases in which the autonomy of the town is preserved, as where it is transferred from one county to another without a change of name, or even where a town is divided and the name of the original town is preserved for a portion of the territory, manifestly have no application to the case of a town which has ceased to remain such, and whose government has been wholly merged in an inconsistent and different municipal organization. In the latter case the legislature has, in the exercise of unquestioned constitutional power, annulled the existence of the corporate entity to which the office of justice pertains, under the Constitution, while in the former they have retained such entity, and its constitutional rights, therefore, remain unimpaired. The questions involved in this case seem to have been so fully covered and exhaustively discussed in the case of the *People* v. *Morrell* (*supra*), that nothing seems necessary to be added to what is there said.

In that case the legislature enacted that the county of Montgomery should be divided, and a certain portion of its territory thereafter be known as the county of Fulton, with the powers and duties of other counties. By this division the first judge of the original county, who resided in one of the towns set off to the county of Fulton, ceased to be a resident of Montgomery county, and it was claimed that his office, although it was provided for and its term fixed by the Constitution, had become vacant on account of his non-residence in the county for which he was appointed, and it was so held by the court. The head-note states the point decided as follows: "When a county is divided and two separate and distinct counties formed out of it by act of the legislature, to one of which a new name is given, whilst the other, it is declared, shall be and remain a separate and distinct county by the name of the county as it existed previous to the division, the judges of the County Courts appointed previous to the division, who happen to reside in

that portion of the territory distinguished as a county with a new name, under the operation of the act requiring judges of County Courts to reside within the county for which they are appointed, lose their offices and are no longer competent to act under their commissions." In illustration of the principle decided, Judge COWEN says: "One incorporated village, A, is divided by statute into two distinct incorporated villages, viz., B and C; independent of an express statute declaration, no lawyer would think of suing either B or C, or both, for a debt due from A. Such a division the legislature may make, even by a majority vote, either of cities or villages. (*People* v. *Morris,* 13 Wend. 325.) These are, like towns or counties, mere political bodies, and their powers may be modified or the corporations themselves abrogated. The recorder of a city is also constitutionally commissioned for five years; but he can no more hold his office after the city charter is repealed than if the city should be physically destroyed."

The act in question seems specially intended, by its terms, to exclude the relator from the number of justices who were authorized to continue in office for their unexpired terms, and there is no rule of construction which requires a court to change words or interpolate expressions into an act to give it a different meaning from what its language plainly and unequivocally imports.

The order of the General Term should be affirmed, with costs.

All concur.

Order affirmed.