STATE, *ex rel*. W. H. POWELL, as Justice of the Peace, of the Eighth Justice of the Peace District of Leon County, v. LEON COUNTY, a political subdivision of the State, and A. PICHARD, as Chairman, HUNTER M. BANNERMAN, *et al.*, as members of and constituting the Board of County Commissioners of Leon County, and PAUL V. LANG, as Clerk, etc.

182 So. 639.
Opinion Filed July 6, 1938.

*J. Lewis Hall,* for Relators;

*William Blount Myers,* for Respondents.

BUFORD, J.—This cause is before us on motion to quash Alternative Writ of Mandamus seeking to coerce the Respondents to pay Relators cost bill incurred in connection with issuing process and conducting a preliminary examination and binding accused over for trial on misdemeanor charge in County Judge's Court.

If Chapter 18002, Acts of 1937, is valid, we think it cannot be construed to curtail the provisions of Section 22, Article V, of the Constitution, which reads as follows:

"Section 2. The Justices of the Peace shall have jurisdiction in cases at law in which the demand or value of the property does not exceed $100.00, and in which the cause of action accrued or the defendant resides in his district; and in such criminal cases, except felonies, as may be prescribed by law, and he shall have power to issue process for the arrest of all persons charged with felonies and misdemeanors not within his jurisdiction to try, and make the same returnable before himself or the county judge for examination, discharge, commitment or bail of the accused. Justices of the Peace shall have power to hold inquests of the dead. Appeal from Justices of the Peace Courts in criminal cases may be tried *de novo* under such regulations as the Legislature may prescribe. (Amended, Joint Resolution 4, Acts 1895; Adopted at general election, 1896)," so as to deprive the Justice of the Peace of his jurisdiction "to issue process for the arrest of all persons charged with felonies and misdemeanors not within his jurisdiction, to try and make the same returnable before himself * * * for examination, discharge, commitment or bail of the accused." And, assuming that this conclusion is correct, then when a

Justice of the Peace issues process for the arrest of one charged with a misdemeanor he may exercise the powers of a committing magistrate and determine whether or not there is reasonable cause to believe the accused guilty as charged and if so to bind him over to the County Judge's Court for trial. Should he find reasonable cause to believe the accused guilty and bind him over to the County Judge for trial, then it becomes his duty to transmit to the County Judge's Court the affidavit, warrant and other papers filed in connection with the preliminary hearing and the accused should then be tried in the County Judge's Court on the affidavit filed before the Justice of the Peace, unless an amended affidavit for cause be filed in the County Judge's Court and in such cases as the one now before us, the Justice of the Peace is entitled to receive from the County the fees provided by statute for the services rendered by him, unless the accused, on conviction, pays the costs. See Sec. 1782 R. G. S., 2833 C. G. L.

We do not think the committing magistrate's right in such cases to receive his fees is controlled by the second paragraph of the section just above referred to because when that statute was enacted there was no necessity for the Justice of the Peace to act as committing magistrate in misdemeanor cases triable before the County Judge and no provision is made for the filing of informations or indictments in such cases. As there is no authority for the filing of informations or indictments in the County Judge's Court, it certainly cannot be construed that a Justice of the Peace is to be deprived of his fees for services rendered in misdemeanor cases where he acts as committing magistrate under the provisions of the Constitution and commits the accused to the County Judge's Court for trial.

Certainly a conviction in County Judge's Court in a case in which the County Judge has trial jurisdiction is tanta-

mount, in effect, to the filing of an information or indictment in a County Court, a Criminal Court of Record or a Circuit Court.

Aside from this, it is a matter of common knowledge that the effect of taking trial jurisdiction in misdemeanor cases from the courts of Justices of the Peace and depriving them of fees in cases of this sort in counties of less than 50,000 population would be to practically abolish such courts because without this trial or committing jurisdiction the emoluments of the office would be so reduced that there would be few, if any, competent persons who would be willing to be burdened with the duties otherwise incident to holding the office. But of that feature I shall speak later.

The office of Justice of the Peace is an ancient one. It is older than the courts of chancery.

In the case of People, *ex rel.* Burby, v. Howland, *et al.* (N. Y. Appeals), 49 N. E. 775, the Court of Appeals of New York, speaking through Mr. Justice VANN, said:

"The office of Justice of the Peace came down to us from remote times. It existed in England before the discovery of America, and it has existed here practically during our entire history, both colonial and state, at first with criminal jurisdiction only, but for more than two centuries past with civil jurisdiction also. 1 Col. Laws 226 (Acts May 6, 1681)'; 2 Col. Laws 964 (Act Dec. 16, 1737); 3 Col. Laws 1011 (Act Dec. 7, 1754); 4 Col. Laws 296 (Act Dec. 16, 1758); 5 Col. Laws 209 (Act Feb. 16, 1771); Law Dict. tit. 'Justice of the Peace' (Tomlins, Burrill, Black and Anderson). It exists in every state of the Union and is regarded as of great importance to the people at large, as it opens the doors of justice near their own homes, and not only affords a cheap and speedy remedy for minor grievances as to rights of property, but also renders substantial aid in the prevention and punishment

of crime. The office as it now exists in towns was established by the Constitution, which does not in express terms say what a justice of the peace shall be. As, however, the office was well known when the Constitution was adopted, it is presumed that the framers thereof and the people meant to establish it as an office with such civil and criminal jurisdiction, within the limitations of that instrument, as the Legislature saw fit to confer upon it. As it has always had criminal jurisdiction and was an existing office with such jurisdiction when each Constitution was adopted, it is at least doubtful whether the Legislature has any power to deprive it of criminal jurisdiction altogether, since that would tend to partially abolish the office as it had been known for time out of mind. A constitutional office cannot be abolished by legislation having that result as a direct object, although it has been held that under the provision of the Constitution authorizing the Legislature to create cities and villages, it may abolish a town altogether, even if the effect is to deprive a justice of the peace of his office. *In re* Gertum, 109 N. Y. 170, 16 N. E. 328. The court, however, was careful to bound such legislation by the limitation of good faith and a proper constitutional object. Thus, Chief Judge Ruger, in delivering the opinion, said: 'It is undoubtedly beyond the power of the Legislature, by direct legislation, to abolish the office of justice of the peace in towns or shorten their terms of office, so long as the town exists; but they have an unquestioned right to alter and change the limits of their jurisdiction, or abolish the town organization altogether, provided it be done in good faith, and for proper constitutional objects. The whole force and effect of the provision in relation to justices is satisfied by enforcing it, so long as there is a town organization in existence, authorized under the Constitution to elect justices

of the peace, and requiring the performance of their functions in the government of the town.'

"Not only is the office itself placed beyond the reach of hostile legislation, but also the term thereof, the method of filling it, and by implication, the method of removing an incumbent. As was well said by the learned appellate division in deciding this case, 'when the Constitution has fixed the term of office, and prescribed the cause for which and the method by which an incumbent of such office may be removed, such cause and method are exclusive, and it is beyond the power of the Legislature to remove or suspend him from office for any other cause or in any other method."

The court of Justice of the Peace was established under our Constitution along with the Supreme Court, the Circuit Courts and the County Judge's Court. See Sec. 1, Article V, of the Constitution. It is as much a unit of the judicial system of Florida as is either of the other courts above named and, therefore, it is a part of the judicial branch of the Government, independent of the legislative or the executive branches of the Government and its prerogatives, independence and existence may not be destroyed by either of these branches of the Government.

In Atlanta and West Point R. R. Co. v. Hudson, 62 Ga. 679, Mr. Justice Bleckley, speaking for the Court, said:

"In a justice court, local government is realized in its last analysis. This tribunal is our primary—most rudimentary organ of home rule. It is the *ne plus ultra* of judicial simplicity."

Mr. Justice Blandford, speaking for the Court in the case of Bendheim Brothers & Co. v. Baldwin, 73 Ga. 594, said:

"A justice of the peace is generally a man of consequence in his neighborhood; he writes the wills, draws the deeds

and pulls the teeth of the people; also he performs divers surgical operations on the animals of his neighbors. The justice has played his part on the busy stage of life from the time of Mr. Justice SHALLOW down to the time of Mr. Justice RIGGINS. Who has not seen the gaping, listening crowd assembled around his honor, the justice, on tiptoe to catch the words of wisdom as they fell from his venerated lips?

> 'And still they gazed,
> And still the wonder grew,
> That one small head
> Could carry all he knew.' "

While there is some degree of facetiousness apparent in Justice Blandford's statement, it was promulgated as the statement of the Supreme Court of Georgia more than fifty years ago. But the office of Justice of the Peace has stood for more than has been stated by the Supreme Court of Georgia in these cases.

The Justice of the Peace, clothed in the robes of judicial power to exercise trial jurisdiction in misdemeanor cases, has for centuries stood as the outer guard protcting the lives and property of the citizenry in remote places from the attacks of the vicious and the depredations of the vandals. He has halted the flow of criminal tendencies at their very source and nipped the bud of criminal development before it came to flower. He has established peace by the application of the law instead of allowing or requiring the citizen to maintain his rights by more primitive methods. He has protected the honest and law-abiding citizen from the thief, the brawler and the lawless. The framers of Sec. 22, Article V, of our Constitution never intended that this exercise of judicial power should be snatched away with all its public benefits to remote communities existing with-

out police or other authorized local legal protection until such time as the people shall have seen fit to abolish that agency of protection by constitutional amendment.

It is fundamental and elementary that the Legislature may not do that by indirect action which it is prohibited by the Constitution to do by direct action.

The writer thinks it therefore follows that the Legislature may not destroy either the constitutional existence or the constitutional jurisdiction of the office of Justice of the Peace, or of the Justice of the Peace Court, and that it therefore also follows that Chapter 18002, *supra,* is repugnant to the provisions of Sec. 22, Article V, of the Constitution.

In the case of State, *ex rel.* Richardson, v. Ferrell, Chapter 18002, Acts of 1937, it was held constitutionally valid against the attack there made on it, but in that case the power of the Legislature to enact this chapter because of the inhibition herein discussed was not present and was not considered by this court. The question is not directly presented in this case but it has been brought to our attention and, therefore, I am impelled to express my views in this regard because I think the judgment in the case of State, *ex rel.* Richardson, v. Ferrell, *supra,* should be overruled, but the majority of the court do not concur in this view.

To hold that in misdemeanor cases in the affected counties a Justice of the Peace is without authority to act as committing magistrate for the purpose of determining whether or not there is reasonable ground to believe that the accused is guilty and thereupon to bind him over for trial in the County Judge's Court, or discharge him, as the facts may warrant, or to hold that under the Constitution he must be accorded the power to exercise that authority, a legislative Act to the contrary notwithstanding, but that

when he does so he is not entitled to the fees prescribed by statute to apply in cases where he acts as committing magistrate merely because there has been no provision made for the filing of information or indictment in the County Judge's Court would be tantamount to abolishing the office of Justice of the Peace by an unlawful exercise of power and not by pursuing the constitutional method of amending the Constitution.

For the reasons stated, we hold Chapter 18002, *supra,* to be valid, but inasmuch as the Constitution vests in the Justice of the Peace the power of a committing magistrate in matters such as are involved in this case and in such matters his right to fees is not prohibited by statute, he is entitled to the legal fees which he claims and the motion to quash the alternative writ should be denied.

So ordered.

WHITFIELD, TERRELL, BROWN and CHAPMAN, J. J., concur.