ALICIA R. O'CONNOR, Individually and as the Duly Elected Police Justice of the Village of Westbury, Plaintiff, *v.* WILLIAM GREENE, as Mayor, and Others, Constituting the Board of Trustees of the Village of Westbury, Defendants.

Supreme Court, Nassau County, June 10, 1940.

*James M. O'Connell*, for the plaintiff.

*Hallock, Weeks & Edwards*, for the defendants.

CUFF, J. This is an action for declaratory judgment in which plaintiff demands that the court determine that she holds the office of police justice for the village of Westbury, Nassau county, to serve for a term of four years, which commenced January 1, 1940. The mayor and the village trustees of Westbury, composing the village board, are the defendants. Their answer alleges that the office of police justice for Westbury was abolished by the village board December 28, 1939. Plaintiff moves for judgment on the pleadings.

The facts, which are not in dispute, follow: On March 21, 1939, the annual village election was held in Westbury. Plaintiff was elected police justice at that election. She took the oath of office. Three days before the commencement of the term, to wit, December 28, 1939, the board of trustees adopted the following resolution:

" Resolved that the office of Police Justice of the Village of Westbury be abolished as of December 31, 1939, on the expiration of the present term."

The defendants, who are solicitous of having the extent of their power under the law determined, maintain that the action which they took is authorized by section 47 of the Village Law. That section reads in part: " A village, other than a village of the first class, may abolish the office of police justice, by the adoption of a resolution therefor by the board of trustees, to take effect upon the expiration of the term of the police justice then in office."

The population of Westbury, when incorporated April 20, 1932, was 2,362. (United States Census.) It is not a village of the first class. (Village Law, § 40.)

The office of police justice stems not from the Constitution, but from legislative mandate. In fact, police justice receives constitutional recognition only once, when in section 8 of article 9 there appears a provision to the effect that " Village officers, whose election or appointment is not provided for by this Constitution shall be elected by the electors of such * * * villages."

Plaintiff's main contention is that section 47 of the Village Law is unconstitutional.

The Legislature had the power to create the office of village police justice. (N. Y. Const. art. 6, § 18.) It has the power to abolish it. A government which creates an office, in the absence of some restriction of a higher authority like a constitutional prohibition against such action, is clothed with implied power to abolish that office. (46 C. J. 934, § 30.) Civil service positions (not elective) are regularly abolished by the governmental agencies creating them for reasons of economy. (*People ex rel. Davison* v. *Williams*, 213 N. Y. 130.) The only limitation placed upon the exercise of that abrogating power is that the legislative body using it must act in good faith. (*People ex rel. Corrigan* v. *Mayor*, 149 N. Y. 215.)

There is no charge of bad faith made against the village board in this proceeding. It should be pointed out, however, that the board is not obliged to establish its good faith. The plaintiff must charge and prove that bad faith motivated the action which extinguished the office. (*People ex rel. Vineing* v. *Hayes*, 135 App. Div. 19.) In the absence of such proof good faith will be presumed.

The Legislature had the power to enact section 47. (N. Y. Const. art. 6, § 18.) The village board, therefore, had the power to pass its resolution dated December 28, 1939.

The only question is, and the court brought this to the attention of counsel at the time of the argument of the motion, whether such abolishing resolution may take effect after the election but before the commencement of the term of the police justice-elect.

I cannot help but think that the contribution to orderly government would have been greater had the Legislature prohibited dropping the office between the election and the expiration of the term of the official elected. In the present state of the law a village board, not liking the choice of the people at the polls, has power to frustrate the action of the electorate by the simple process of abolishing the office. The members of the board could, within the law, go further. They could then recreate (Village Law, § 47) the office and appoint, to fill the vacancy (Village Law, § 61), their own selection — even the defeated candidate. This, however, is a government of laws and the law-making branch has exclusive authority in setting up the political structure of the State and defining its political policies. If a village board abused its powers to the extent indicated, the people would not be helpless — relief from such excesses could be had at the polls when the next village election would be held. (This comment should not be interpreted as the slightest reflection by this court upon the motives or conduct of the defendants. There is not a scintilla of evidence suggesting that the defendants had some ulterior motive. This court has no idea that they would resort to the abuses referred to. I have simply outlined, *arguendo*, possibilities under the law.)

The plaintiff urges that having been chosen at the polls, she has a right to hold the office for which she was elected. This conception is not in conformity with the American system. A person has no vested right in a public office. (*Butler* v. *Pennsylvania*, 10 How. [U. S.] 402.)

The Municipal Court of the City of New York is comparable to the Police Justice Court of a village. Our Court of Appeals recently adjudicated upon the power of the city of New York to reduce the salary of a Municipal Court justice of that city during his term. In dealing with the subject, the court treats with " inferior local courts." Concerning these courts, CRANE, Ch. J., writing the prevailing opinion, states: " The Municipal Court of the City of New York is thus an inferior local court of civil jurisdiction, created by the Legislature. Nowhere do we find in the Constitution any provision for its creation, continuance or even existence. The Legislature having created it, may abolish it at any time or transfer

its jurisdiction to any other tribunal. To regulate it, both as to tenure of office as well as to any other circumstance and condition, is a power specifically given by the Constitution, and this power includes the right at any time to change or modify the compensation of its judges. Surely if the Legislature has power to abolish the court and is given specifically plenary power to regulate it, as the whole includes the part, so this power must permit of the decrease or increase in salary." (*Haggerty* v. *City of New York*, 267 N. Y. 252, 256.)

It will be noted that the Court of Appeals held that an inferior court may be abolished by the Legislature *at any time*. When a court is abolished the tenure of the judge, whether serving or not, falls with it. (*Gertum* v. *Board of Supervisors*, 109 N. Y. 170.)

The *Gertum* case deals with a question strikingly similar to the one involved here. The office of justice of the peace was abolished after the election of the justice and prior to his assuming office. The facts in that case were: Section 1 of chapter 335 of the Laws of 1886 made the town of New Lots in Kings county a part of the city of Brooklyn. Section 7 provided that "the supervisors of the town of New Lots, and the several justices of the peace of said town, duly elected, qualified and acting at the time this act shall take effect, shall continue to hold their offices for the terms for which they were respectively elected." The act provided further that the terms of all town officers would cease at the time when the law took effect. This was August 1, 1886. The plaintiff, a town justice of the peace, had been elected in April, 1886, and was to commence his term January 1, 1887. He contended that his election by the people for a specific term should be recognized. The reasoning of the court was that chapter 335 of the Laws of 1886 had abolished the town; that the Legislature had the power to effect that change; that the town having been abolished, there was no court in which the incumbent could function; that his office no longer existed. His application for mandamus was denied.

The reasoning, which was ample in that case, is not important. The point is that the decision holds that the office of justice of the peace may be abolished by the Legislature after election and prior to the commencement of the term of the justice-elect. Although this decision was rendered April 10, 1888, it was cited with approval as late as March, 1929. (*City of New York* v. *Village of Lawrence*, 250 N. Y. 429, 437.)

Judgment in this case must be rendered in favor of the defendants.