In the Matter of MICHAEL MAGNOTTA, Appellant and Respondent, against HERBERT C. GERLACH et al., Constituting the Board of Acquisition and Contract of the County of Westchester, Respondents and Appellants, and PARKWAY FLEETWOOD BUILDING, INC., Third-Party Respondent and Appellant.

Argued May 22, 1950; decided July 11, 1950.

*Malcolm Wilson* and *Edward J. Freeman* for petitioner, appellant and respondent. I. Petitioner's bid of $8,900 net was the highest bid and should have been accepted by the Board of Acquisition and Contract. II. The relief prayed for in the petition should be granted. (*People ex rel. Mathews & Co.* v. *City of Buffalo,* 5 Misc. 36; *People ex rel. Lynch* v. *Lennon,* 147 App. Div. 537; *Arensmeyer, Warnock, Zarndt, Inc.,* v. *Wray,* 118 Misc. 619.)

*Harry G. Herman, County Attorney* (*Francis J. Morgan* of counsel), for respondents and appellants. I. The sale was valid in every respect. (*Brownell* v. *Town of Greenwich,* 114 N. Y. 518; *Mayor of City of N. Y.* v. *Sands,* 105 N. Y. 210.) II. The terms of sale constituted a contract. III. The expenses incident to the sale of the parcel in question were not in any way related to the '' highest bid ''. (*Brownell* v. *Town of Greenwich,* 114 N. Y. 518; *Mayor of City of N. Y.* v. *Sands,* 105 N. Y. 210.) IV. Special Term properly dismissed the petition. (*Matter of Firshein* v. *Reavy,* 263 App. Div. 490; *Matter of Colonial Beacon Oil Co.* v. *Finn,* 245 App. Div. 459; *People ex rel. Delaney* v. *Interborough R. T. Co.,* 192 App. Div. 450; *Matter of Whitman,* 225 N. Y. 1.)

*Sol Rubin* for Parkway Fleetwood Building, Inc., respondent and appellant. I. The petition fails to state a cause of action. (*Matter of Whitman,* 225 N. Y. 1; *Matter of Perpente* v. *Moss,* 293 N. Y. 325; *Matter of Fahey* v. *Wright,* 256 App. Div. 474;

*Matter of Reynolds* v. *Valentine,* 169 Misc. 631.) II. The action of the county officials represented a constitutional exercise of their public functions in keeping with the responsibility imposed upon them by law. (*Brownell* v. *Town of Greenwich,* 114 N. Y. 518; *Mayor City of N. Y.* v. *Sands,* 105 N. Y. 210; *Picone* v. *City of New York,* 176 Misc. 967; *Nathan* v. *O'Brien,* 117 App. Div. 664; *Govers* v. *Board of Supervisors of Westchester Co.,* 171 N. Y. 403; *Town of Irondequoit* v. *Monroe County,* 171 Misc. 125; *Talcott* v. *City of Buffalo,* 125 N. Y. 280; *Ziegler* v. *Chapin,* 126 N. Y. 342; *Dunning* v. *Elmore & Hamilton Contr. Co.,* 204 N. Y. 647; *Bishop* v. *McTigue,* 210 App. Div. 826.) III. Appellant Magnotta has not overcome the presumption of validity of the acts of the public officials involved. (*Matter of Strand Billiard Academy* v. *Moss,* 294 N. Y. 865; *Matter of Whitman,* 225 N. Y. 1; *Hirshfield* v. *Craig,* 239 N. Y. 98; *People ex rel. Langdon* v. *Dalton,* 46 App. Div. 264; *Remington* v. *State of New York,* 116 App. Div. 522; *People ex rel. Melenbacher* v. *Hubbell,* 82 Misc. 624; *People ex rel. Chambers* v. *Shults,* 166 App. Div. 868; *Brennan Constr. Co.* v. *State of New York,* 117 Misc. 816.)

CONWAY, J. In 1948, by means of a local law (No. 28–1948), the Board of Supervisors for Westchester County authorized and directed its Board of Acquisition and Contract to offer certain county-owned land in the city of Mount Vernon for sale at a price of not less than $6,000. The land was to be sold under the procedure previously established by the Board of Supervisors for the sale of county-owned real estate (local law No. 20–1946, as amended the same year by local law No. 36–1946). Pursuant thereto, the Board of Acquisition and Contract [hereinafter called the Board] advertised that the above-mentioned land would be sold at public auction on October 11, 1948, at the Westchester County Office Building. The County Executive of Westchester County, who was also a member of the Board of Acquisition and Contract, presided at the special meeting of the Board called at that time and place and read the terms of sale which had been drafted by the Board. They provided in part: " After the close of bidding on each plot, the party offering *the highest bid* for said particular plot shall be required to execute a memorandum of sale and at the same time to pay ten per cent (10%) of the amount bid either in cash, bank check or draft, or certified check * * *." (Emphasis supplied.)

" A contract as hereinbefore provided for shall be executed by the successful bidder on each plot within five (5) days after the acceptance of a bid * * * and title to close within sixty (60) days thereafter * * * *at which time the balance of the purchase price shall be due and payable in the same manner as the* amount deposited with the bid." (Emphasis supplied.)

The terms of sale also contained the following provision concerning real estate brokers:

" Any licensed real estate broker representing a prospective bidder must file with the Board of Acquisition and Contract, County Office Building, White Plains, New York, before commencement of bidding, a letter or other written authorization indicating that said broker is representing a specific prospective bidder, and in the event this provision is not complied with, no real estate brokerage shall be paid by the County.

" In the event that a real estate broker offers a bid on behalf of a bidder at the public auction, The County of Westchester will pay the usual broker's fee as provided by the Rules and Regulations of the Westchester County Realty Board provided said bid is accepted as herein mentioned. Any licensed real estate broker submitting a bid as herein provided for shall sign the broker's clause accompanying the memorandum of sale, and a similar clause will be inserted in the contract. No brokerage will be deemed earned by the broker or payable by the County of Westchester unless the bid is accepted and the title closed by the delivery of the deed therefor."

Authorization for this provision in the terms of sale concerning the use of brokers and the payment of brokerage fees is found in subdivision 2 (e) of the act establishing procedure for the sale of county-owned real estate (local law No. 20–1946, as amd. by local law No. 36–1946) which reads as follows: " Real estate brokerage fees shall be paid only where such fees are specifically earned under the recognized and accepted practice of the Westchester County Realty Board."

On September 20, 1948, prior to the day of the sale, a New Rochelle firm addressed a letter to the Board advising that it had been designated by Parkway Fleetwood Building, Inc. (hereinafter called Parkway) as its authorized broker in connection with a bid that Parkway intended to make. No one filed such an authorization to act as a broker for petitioner. On the day of the auction, the County Executive, after reading the terms of sale,

stated that the opening bid was by Parkway subject to brokerage of 5%. Petitioner, through his attorney, then bid $6,300 and said that his bid was " ' net to the County — with no brokerage involved.' " The bidding then continued with successive bids being made by petitioner and by the broker on behalf of Parkway. At one point during the bidding the County Executive conducting the sale, stated " that the property would be knocked down to the highest bidder, broker or no broker." The bidding continued until petitioner offered $8,900. Parkway's broker then bid $9,000, whereupon the County Executive knocked down the property to Parkway.

The minutes of this special meeting of the Board showed that the " High Bidder " was Parkway, that the amount of the bid was $9,000 with a $900 deposit being paid in cash and that the afore-mentioned firm had acted as broker. The minutes also showed that petitioner was the only other bidder and that his bid was $8,900. At a second meeting, immediately following, the Board resolved to accept the higher bid of Parkway and directed that letters of acceptance be sent to it and its broker.

Petitioner then commenced this article 78 proceeding in the nature of mandamus seeking to compel the Board (1) to declare his bid of $8,900, which was not subject to brokerage fees, to be the highest bid, (2) to direct the county executive to enter into a contract of sale with him, and (3) upon payment of the consideration, to deliver a deed to him. Special Term dismissed the petition stating that the sale had been conducted in accordance with the terms of sale, that by those terms the property was to go to the highest bidder irrespective of whether or not the bid was subject to brokerage fees, that in the absence of any fraud or illegality, the duty of determining what terms and conditions were proper and for the best interests of the county was a matter resting solely within the peculiar province of the administrative body and the court should not intervene. The Appellate Division, however, reversed the order of Special Term upon the law and the facts upon the ground that the auction had not been conducted according to the provisions of local law No. 20–1946, as amended by local law No. 36–1946, and of local law No. 28–1948. It was of the opinion that the words " highest bid " in the terms of sale meant the bid that would yield the *largest net return* to the county. The court decided further to annul the entire sale, instead of merely dismissing the petition, since it

believed that the statement of the County Executive conducting the sale, as above quoted, was unauthorized and illegal and may have misled bidders at the sale and prevented a fair sale upon an equal basis to all bidders.

The Board and Parkway now appeal to this court from the order of the Appellate Division annulling the sale and seek reinstatement of the order of Special Term. The petitioner cross-appeals seeking the relief originally prayed for in his petition.

We think the sale was properly conducted by the Board in accordance with the procedure previously established by the Board of Supervisors for the sale of county-owned real estate. Both the local law establishing such procedure (No. 20–1946, as amd. by No. 36–1946) and the terms of sale drafted pursuant thereto, authorized the participation of brokers in the bidding and the payment of brokerage fees by the county. While we agree with the petitioner and the Appellate Division that the Board had the duty of obtaining the highest possible net return to the county for the property, we do not believe that there was any failure in that duty by the Board's acceptance of Parkway's bid, submitted through a broker. The duty of the county officials — the members of both the Board of Acquisition and Contract and the Board of Supervisors — to sell surplus county-owned real estate on the best possible terms was not limited merely to a calculation, at the time of the actual bidding, of which bid would yield the largest net return to the county. In 1946, when the Board of Supervisors adopted the above-mentioned act establishing procedure for the sale of county-owned real estate, it had the duty then, as well as at the time of the sale of any particular piece of property, to secure the highest possible return to the county. By charter, the Board of Supervisors was specifically empowered to sell certain county-owned property " upon such terms and conditions as it may deem proper and for the best interests of the county." (Westchester County Charter, § 3, subd. [2]; L. 1937, ch. 617, as amd. by L. 1944, ch. 323.) This grant of power conferred upon the Board of Supervisors " the authority to do all things necessary to accomplish the object of the grant, and to enable the donee of the power to effect the purpose of the act." (*Mayor of City of New York* v. *Sands,* 105 N. Y. 210, 218; *Brownell* v. *Town of Greenwich,* 114 N. Y. 518.) As we have seen, the Board of Supervisors, in 1946, pursuant to this grant of power, and exercising its good business

judgment, specifically provided for the payment, under certain conditions, of brokerage fees by the county. It is not for the courts to engage in discussion of the relative merits of auction sales conducted with or without brokers. Experience may have proved, in that locality, that the participation of brokers, whose very business it is to procure buyers able to meet the requirements of the terms of sale, would in the greater number of cases raise the selling price of the property. The Board of Supervisors may have reasoned that brokers produce buyers and increase the probability of obtaining the highest net return possible. In short, there was a reasonable basis for the action of the Board of Supervisors in engaging to pay brokerage fees. Opposed to this, we find no prohibition against the payment of brokerage fees by a county when county-owned real estate is sold. (See *Mayor of City of New York* v. *Sands, supra*; *Brownell* v. *Town of Greenwich, supra.*)

Since the participation of brokers and the payment of brokerage fees was thus authorized by the local laws and the terms of sale drafted pursuant thereto, the Board of Acquisition and Contract acted properly and within its powers in treating the sum payable for brokerage as an expense of the sale and not as affecting the amount of the bid. The Board was not required, at each stage of the bidding, to make an arithmetical computation to determine whether a particular bid by a broker, less brokerage, would yield a greater or less net return to the county than another bid by a person without a broker. Apart from the administrative difficulty involved, such a course might discourage the attendance of brokers at such an auction sale and thereby vitiate the beneficial effects sought to be obtained by their efforts.

There is no showing that the Board of Supervisors in establishing the procedure, or the Board in drafting the terms of sale and conducting the auction, acted illegally, capriciously or fraudulently. The general presumption is that public officials, as well as boards, act honestly and in accordance with law. (*Matter of Whitman, No. 1,* 225 N. Y. 1, 9–10.) There is no claim that the $9,000 bid by Parkway was not regularly or properly made, or that it and its broker failed in any way to comply with the terms of sale. It must be concluded then, that the power and judgment thus exercised by the county officials was within their competency.

The order of the Appellate Division should be reversed and that of Special Term affirmed, with costs in this court and in the Appellate Division to the County Board of Westchester County.

LOUGHRAN, Ch. J., LEWIS, DESMOND, DYE, FULD and FROESSEL, JJ., concur.

Ordered accordingly.