Jasen, J. (concurring).
In this case, the Deputy Attorney-General, at the instance of the Governor and the local District Attorney, conducted a Grand Jury investigation in Monroe County into the affairs of a labor union. The Grand Jury returned eight indictments against various defendants, charging them, among other things, with having converted union funds for personal benefit. Special Term dismissed the indictments on the ground that the evidence before the Grand Jury did not establish that the criminal acts allegedly committed were either "organized” or intercounty and, therefore, there was no authority for the appearnace of the Deputy Attorney-General before the Grand Jury. The Appellate Division, Fourth Department, with two Justices dissenting, reversed and ordered the indictments reinstated. (46 AD2d 518.)
I agree with the majority that there should be an affirmance. I disagree, however, with the intimation in the majority’s opinion that Grand Jury proceedings conducted by the representatives of the Organized Crime Task Force will be voided if the Task Force fails to establish, at some point, that the events investigated by the Grand Jury involve intercounty or interstate activities. In my view, absent demonstrable bad faith on the part of the Governor and local District Attorney, *225 any Grand Jury proceeding conducted by the Task Force pursuant to the stated approval of these officials is valid and is not subject to subsequent judicial scrutiny.
The State-wide Organized Crime Task Force, created by the Legislature in 1970, is empowered to conduct investigations and prosecutions of organized criminal activity carried on within two counties or within this State and another jurisdiction. It is also to co-operate with and assist local prosecutors and law enforcement officials in their efforts against organized crime. (Executive Law, § 70-a, subd 1.) In order to fulfill its statutory mandate to investigate and prosecute, it is evident that authorized representatives of the Task Force must be permitted to make Grand Jury appearances. On the other hand, it is also necessary to avoid undermining the proper investigatory and prosecutorial functions of the local District Attorneys. In order to ensure that the Task Force would not abuse authority to conduct Grand Jury proceedings, the Legislature, in conferring this authority on the Task Force, conditioned it on obtaining the prior approval of both the Governor and the local District Attorney. (Executive Law, § 70-a, subd 7.) The purpose of this check was not to protect those suspected of criminal activity, for they will be investigated in any case, but to protect each local prosecutor from the danger that the Task Force would become a roving commission, acting in excess of its limited jurisdiction and usurping the prerogatives of the District Attorney.
Where the Governor and District Attorney, in the proper exercise of their official powers, approve the entry of the Task Force, there is little danger that the Task Force is treading on forbidden ground. The general rule is that the Governor and the District Attorney, as public officials, will perform their duties honestly and in conformity with the law. (Matter of Driscoll v Troy Housing Auth., 6 NY2d 513, 518; Matter of Magnotta v Gerlach, 301 NY 143, 149.) There is a presumption that "an official does no act contrary to his official duty, or omits no act which his official duty requires.” (Matter of Whitman, 225 NY 1, 9; accord Matter of Marcellus, 165 NY 70, 77.) When the Legislature confers a power upon public officials, it does so with the knowledge that "public officials will perform their duties in good faith and with proper regard to the interests committed to them.” (Schieffelin v Goldsmith, 253 NY 243, 252-253; Matter of Emerson v Buck, 230 NY 380, 389.) Thus, when the Legislature granted to the Task Force *226 the authority to appear before Grand Juries, provided the Governor and District Attorney approve, it presumed that the Governor and District Attorney would not grant approval unless they were satisfied that there was some basis for the investigation and prosecution to be conducted by the Task Force.
At the time the investigation is approved and the Grand Jury proceedings commenced, there may be situations where definitive proof is not available to satisfy a court either that organized crime is involved or that the activity investigated spans more than one county. However, the Legislature did not require that definitive proof of the jurisdictional elements be obtained before the Task Force could conduct investigations or prosecutions. All that is required to satisfy the legislative mandate is that the Governor and local District Attorney conclude that there is some basis for a belief that organized crime is involved and that the alleged criminal activity occurred in more than one county. When these officials give their approval, it is presumed that they found that there was a basis for a Task Force investigation. Moreover, aside from a finding that a basis for Task Force jurisdiction exists, an approval also represents a determination that the investigation may be more appropriately handled by a State-wide prosecutor, rather than by the locally elected District Attorney. Absent proof that the Governor and District Attorney gave their approval in bad faith, the courts should not review a discretionary determinaiton properly placed by the Legislature within the jurisdiction of responsible executive officials. Even if the investigation eventually does not discover anything but local, unorganized criminal activity, that does not negate the belief on the part of the responsible officials that there was a reasonable basis to initiate an investigation.
As Presiding Justice Marsh noted, Grand Jury proceedings should not be considered voidable, depending upon the facts subsequently adduced. In the absence of bad faith that would rebut the presumption of regularity (People v Richetti, 302 NY 290, 298), Grand Jury appearances by Task Force representatives which have been approved by the Governor and the local District Attorney should be sustained by the courts. The statute does not require any less.
The majority itself concedes that no proof of "organized crime activities” is required before the Deputy Attorney-General can appear before a local Grand Jury. Proof of multi *227 county activity might be just as difficult of proof at an early stage of investigation as is proof that the criminal activity is organized. I can see no valid basis for distinguishing between them. Neither did Presiding Justice Marsh writing for the Appellate Division.
Since I believe that the Task Force was not required to make a factual showing to establish its investigatory authority, and since the appellants failed to produce any evidence indicating that the Governor and District Attorney approved the investigation in bad faith, I conclude that the Grand Jury appearance of the Deputy Attorney-General was proper and that the ensuing indictments were lawful. For this reason I would affirm the orders of the Appellate Division.
Chief Judge Breitel and Judges Wachtler, Fuchsberg and Cooke concur with Judge Jones; Judge Jasen concurs in result in a separate opinion; Judge Gabrielli taking no part.
Orders affirmed.