# Town of Massena, Appellant, v Niagara Mohawk Power Corporation, Respondent.

Third Department, December 15, 1977

**APPEARANCES OF COUNSEL**

*Duncan, Brown, Weinberg & Palmer, P. C. (Frederick D. Palmer* and *Wallace L. Duncan* of counsel), and *Lavigne & Nicandri (Eugene L. Nicandri* of counsel), for appellant.

*Fisher & Hughes (Bryan J. Hughes* of counsel), *Lauman*

*Martin* and *Shea, Gould, Climenko & Casey (Milton S. Gould* of counsel), for respondent.

## OPINION OF THE COURT

HERLIHY, J.

As a preliminary matter it is noteworthy that a trial was held herein by stipulation of the parties to present evidence *on both the issues* of *condemnation* and *temporary possession* of property belonging to the respondent. It is solely those issues which are before the court upon this appeal.

On April 16, 1974, the plaintiff, an incorporated municipality, adopted a resolution authorizing it to own and operate an electric utility and further authorizing the issuance of $4,500,-000 serial bonds to finance the project. The resolution was approved by the eligible voters of the plaintiff at a mandatory referendum pursuant to section 360 of the General Municipal Law on May 30, 1974.

It is apparent from the record herein that the respondent is committed to the principle of resisting the effort of the plaintiff to replace it as the supplier and provider of electricity within the boundaries of plaintiff. This court has previously had the parties before it upon a petition of the respondent seeking review of a preliminary certificate issued by the Public Service Commission of the State of New York as required by section 5-a of the Condemnation Law upon the filing of a petition for a condemnation order in the County Court of St. Lawrence County on March 13, 1975 *(Matter of Niagara Mohawk Power Corp. v Public Serv. Comm. of State of N. Y.,* 52 AD2d 388, app dsmd 40 NY2d 844).

Subsequent to the filing of the petition and an amended petition the respondent moved to dismiss the petitions upon various grounds, all of which were rejected by the court *(Town of Massena v Niagara Mohawk Power Corp.,* 87 Misc 2d 79). Thereafter, the respondent on June 11, 1976 filed its answer to the petitions and the plaintiff renewed a motion for temporary possession. The court referred to its prior decision on the matter *(id.)* and adopted the factual findings made therein as the basis for the decision of most of the issues raised by the pleadings.

The court ascertained that the pleadings raised some six issues as follows:

(I.) Does the petition fail to set forth with specificity the property to be condemned?

(II.) Did plaintiff fail to join a necessary person, the Marine Midland Bank, as a party in this action?

(III.) Did plaintiff adequately set forth in its petition the value of the property sought to be condemned, and did plaintiff negotiate with defendant in good faith for the purchase of such property?

(IV.) Is plaintiff able to complete the work or improvement for which the property is to be condemned and to provide the same for public use?

(V.) Does plaintiff's proposed plan for providing service through a municipal electric utility system conform to and comply with the enacting resolution of the local legislative body?

(VI.) Is plaintiff entitled to grant of temporary possession?

The court in a seriatim determination of those issues found: (I) that certain specific items should be excluded from condemnation, but that the petition adequately specified the property to be condemned and was not jurisdictionally defective; (II) that the Marine Midland Bank as a mortgagee was not a necessary party to the proceedings and, accordingly, there was no jurisdictional defect in that regard; (III) that the petition adequately sets forth the value of the property sought to be condemned and plaintiff had negotiated in good faith for the purchase of the property with the further observation "that valuation must initially be determined by the commissioners"; and (IV) that insofar as the inability to complete the project is concerned, the ability "to pay the award and damages can only be resolved upon a determination by the commissioners" and further, that as a matter of proof, the failure of the plaintiff to have *formal* commitments from the Power Authority of the State of New York (hereinafter, Power Authority) or respondent as to the supply of power would not establish an inability to provide the service.

Upon this appeal the respondent in some of its many-faceted arguments urges that the trial court erred in determining certain of the foregoing issues; however, such suggestions are without any merit and those determinations are affirmed.

The sole determination against the plaintiff was that the proof established that it had "materially departed from both the authorized plan of acquisition (i.e., construction) *and* its formerly proposed method of furnishing service to customers of the municipal utility." The court concluded "that the plans

for acquisition and method of providing service presently proposed so materially depart from those enacted by the Town Board and electorate that the petition for judgment of condemnation must be dismissed."

The resolution[1] of the plaintiff as approved at a referendum provided in its section 3 that the system was to be condemned from the respondent with construction thereafter of "a sub-station and transmission line". In its section 4 it was proposed that service would be furnished by purchasing power from the Power Authority. It was also provided in section 4 that the

---

1. The provisions of the resolution which are at issue herein are sections 1 through 4 and they provide as follows:

"Section 1. The Town of Massena, St. Lawrence County, New York, is hereby authorized to establish, own and operate a public utility service system within and-or without its territorial limits for the purpose of furnishing to itself and for compensation to its inhabitants any service similar to that furnished by any public utility company specified in Article 4-A of the Public Service Law. Notwithstanding any general or special law, pursuant to the provisions of subdivision 2 of Section 360 of the General Municipal Law, said Town may, in the future, construct, lease, purchase, own, acquire, use and-or operate any additions to such system within or without its territorial limits for the purpose aforesaid. For such purpose such Town is hereby authorized to purchase electrical energy from the State of New York or from any state agency, or other municipal corporation, or from any private or public corporation.

"Section 2. In pursuance of the aforesaid purpose, the acquisition of and construction of additions to a public utility service system, including land or rights in land in connection therewith, by said Town, is hereby authorized at a maximum estimated cost of $4,500,000.

"Section 3. The proposed method of providing such public utility service system is by the acquisition thereof from the Niagara Mohawk Power Corporation pursuant to condemnation proceedings to be instituted in conformance with law and the proposed method of constructing additions to such system, once it has been acquired, consists of the construction of a sub-station and transmission line, together with other related facilities incidental thereto, pursuant to contracts to be let in conformance with provisions of the General Municipal Law.

"Section 4. The proposed method of furnishing such service, once such system is operable as a separate system, consists of the purchase of a power supply from the Power Authority of the State of New York's transmission system, in connection with which the aforesaid additions to such system is necessary. Due to the construction time required to enable such system to operate separately, arrangements to transmit power from the Power Authority of the State of New York over the Niagara Mohawk Power Corporation's transmission system shall be obtained under terms equal to existing transmission contracts which such Corporation has with other municipal electrical systems in the State of New York, until the construction of a direct interconnection can be completed. It is further proposed that such public utility service system shall be administered by a public board which shall be established and whose members shall be appointed by the Town Board of the Town of Massena, New York in the manner provided by law, which board shall impose, in a manner consistent with law, a system of consumer electric rates, the intent of which shall be to enable such public utility service system to be self-liquidating."

method of furnishing service would be ultimately by a direct link with the lines of the Power Authority, and in the interim by transmission over existing lines of respondent from the Power Authority.

The deviation consists of no present intention to construct separate facilities for a direct line with the Power Authority and now intending to furnish service *solely* by purchase of power from the Power Authority by transmission to town boundaries over incoming lines of the respondent. Section 360 of the General Municipal Law[2] is the statute which controls the instant case (see *O'Flynn v Village of East Rochester,* 292 NY 156).

Upon this appeal there are presented the questions of whether or not an intended deviation from the original proposed method of acquiring property and furnishing the same would preclude condemnation and/or temporary possession; and further, whether or not in view of the proposals in the

---

2. Section 360 provides in part as follows:

"1. * * * 'Municipal corporations' * * * shall mean a county, city, town or village.

"2. Notwithstanding any general or special law, any municipal corporation may construct, lease, purchase, own, acquire, use and/or operate any public utility service within or without its territorial limits, for the purpose of furnishing to itself or for compensation to its inhabitants, any service similar to that furnished by any public utility company specified in article four of the public service law. For such purpose, any municipal corporation may purchase gas or electrical energy from the state, or from any state agency, or other municipal corporation, or from any private or public *corporation.*

"3. The proposed method of constructing, leasing, purchasing, acquiring, the plant and facilities for such service, together with both the maximum and the estimated costs thereof, and the method of furnishing such service shall be fixed * * * by a resolution of the town board * * *.

"4. * * * Authority to adopt such a resolution * * * is hereby conferred upon the town board of the town.

"5. * * * Any such action by the town board of a town shall be submitted for the approval of the electors of the town at the next general election to be held not less than ninety days after the adoption of such resolution; or at a special election called in the same manner as provided in the town law for submission of a proposition at a special town meeting or a special town election * * *.

"6. Such municipal corporation may for such purpose acquire the public utility service of any public utility company operating pursuant to article four of the public service law or any other public utility service within or without its territorial limits, by purchase, or by condemnation in the manner provided by law for condemnation by such municipal corporation or private property for a public use. Such municipal corporation shall have the power to construct or acquire by purchase or condemnation any transmission lines or pipes connecting it with any source or sources of gas, either natural, artificial or mixed or electric power or production and to share with other municipal corporations the cost of such transmission lines or pipes."

resolution any change of intention as to furnishing service was so material as to defeat the purpose of condemnation.

The County Court did not set forth the reasoning whereby it would conclude that a departure would, as a matter of law, preclude the condemnation, but it did find that the original ordinance had been properly enacted. The record establishes that the proceeding was commenced pursuant to a valid viable and enforceable resolution to obtain, own and operate an electrical utility pursuant to section 360 of the General Municipal Law.

■ ■ Upon this appeal the respondent contends that the resolution as an implementation of section 360 of the General Municipal Law is actually a bond resolution subject to the restrictions of subdivision 1 of section 32.00 and subdivision a of section 165.00 of the Local Finance Law as being for a specific object or purpose and that funds may only be expended for such purpose. However, insofar as some defect in the expenditure or a bond resolution might be established in a proper case, there is nothing which could preclude condemnation pursuant to section 360 of the General Municipal Law. Indeed, the said section 360 does not direct that bonds or any form of borrowing will be used, but only that the resolution and referendum must specify the costs. Section 362 of the General Municipal Law does provide that financing may be handled pursuant to the Local Finance Law, but it does not require that it be placed in the original authorizing resolution or passed upon by the required referendum.

Where the finances come from is in no way related to the Commissioners of Appraisal's determination of values. The amount mentioned in the resolution was the *"stop gap"* which the voters authorized to be used to finance the property to be condemned. It would be entirely possible, following the condemnation award, to submit to the voters—assuming the award exceeded the amount mentioned in the resolution—a resolution authorizing the necessary additional funds required for the acquisition. It would be the voter's ultimate decision.[3]

■ Accordingly, the contention that the provisions of the Local Finance Law would require a finding of a lack of authority to condemn property pursuant to section 360 of the General Municipal Law is without merit.

3. While not an issue on this appeal, on the oral argument and in the Town of Massena's brief, the court was advised that the amendatory resolution (March 17, 1977) was approved by the voters at a referendum.

Furthermore, it is clear that the goal of purchasing the municipal power from the Power Authority and transmitting it in the municipality over municipally owned and controlled lines is not being departed from. While at present there will no longer be the construction program originally intended, or envisioned, that program only relates to the tools of service and does not affect the fundamental concept of the system as not being one which would generate its own power. The proof as to costs by proceeding one way as opposed to another and the evidence relating to the desirability of one method versus another is interesting, but it has no relevancy to the purpose of this proceeding. While it is established that the members of the town board were acting according to a "plan" in drawing the resolution and proposing the method of acquiring power, the electorate voted upon the resolution and not each detail of a plan.

The finding in this case that there is a "material" deviation intended is without any substantial support in this record.

■ The present proceeding does not disclose that the property sought by condemnation will exceed the authority of the resolution as ratified in the referendum. As found by the trial court, the value of the property taken will be decided by the amount awarded by the commissioners. Whatever deviation is present in this case, or intended in the future from the resolution, there has been no showing that it could in any way have the legal effect of nullifying the power of condemnation as authorized in the resolution and referendum.

Upon this record there is no basis for denying the plaintiff the right to condemnation and temporary possession.

■ What is decisive here is that there is no material change or alteration in the purpose "establishment, ownership and operation of public utility" as authorized by the resolution submitted to and passed by the voters. There must, of necessity, be some flexibility in matters of such import especially in these days of inflation, spiraling costs of lands and material, and attorneys' fees and expenses not contemplated resulting from a series of lawsuits. In sum, there may be changes, but the fundamental intent and purpose of the resolution may not be materially changed or altered.

Of course, the town in presenting its proof could have conformed to the terms and conditions of the original resolution, but nevertheless, the intention to own and operate its own public utility was not so materially altered or changed as

to violate section 360. To carry out its objectives, the manner of furnishing the electric current or the necessity of the substation was not so material in the context of the present litigation. The purpose of condemnation under the section remained substantially the same.

This being a case of first impression, it is our opinion under the factual situation herein *that there has been substantial compliance with all of the terms and conditions of section 360 of the General Municipal Law.*

The judgment should be reversed, on the law and the facts, with costs to plaintiff, and matter remitted to County Court with directions to grant the petition for condemnation and enter an appropriate judgment thereon together with the right of temporary possession in accordance with the Condemnation Law. The appeal from the order of May 17, 1977 should be dismissed as academic.

MAHONEY, J. (dissenting). I agree with the majority's holding that the town has not materially departed from the plan approved by the referendum, but there remains an independent basis for dismissing this condemnation proceeding. Subdivision 3 of section 360 of the General Municipal Law requires that the resolution submitted to the townspeople set forth "both the maximum and the estimated costs" of the proposed enterprise. The resolution which won approval in the referendum merely authorized "a maximum estimated cost of $4,500,-000".

Regardless of the good faith and expertise of the town legislators in estimating the cost of taking over the electric utility system, their estimate would inevitably be subject to some error. Appraising the value of simple, unimproved realty is a difficult problem, and a fortiori any estimate of the value of the complex of Niagara Mohawk property to be condemned herein and the cost of the projected improvements to be carried out by the town could be no more than an approximation. The obvious purposes of the statute in requiring that "both the maximum and the estimated costs" of the project be included in the resolution are to make the voters aware of the magnitude of the possible error in the estimate of the costs they may incur and to allow the town some leeway in prosecuting its condemnation proceeding.

The statutory purpose noted first above was not fulfilled by the resolution herein. The consulting engineers hired by the

town to report on the feasibility of taking over Niagara Mohawk's operations estimated the cost at $4,500,000. (Feasibility Report, appellant's appendix, p A.777.) This figure was not presented by the consulting engineers to the town as the maximum cost. As a result of the failure of the resolution to give some indication of the uncertainty of the projected cost, the voters were not informed of an important factor in making an intelligent decision.

As for the other statutory purpose, it is no answer to say that the town can always return to the voters for a further authorization in the event the actual cost is determined in the condemnation proceeding to be over $4,500,000. Substantial moneys for legal and expert witness fees would have to be expended in the course of such a proceeding. If the cost exceeds $4,500,000, the town, having already expended substantial funds in the litigation, would have to return to its voters for further authority. The voters would have to choose between paying more for the utility or losing the funds already expended. The chance of this undesirable dilemma arising would be substantially reduced if the resolution stated the town's best estimate of the cost as well as the maximum cost which it could reasonably foresee.

The judgment dismissing the proceeding should be affirmed.

GREENBLOTT, J. P., MAIN and LARKIN, JJ., concur with HERLIHY, J.; MAHONEY, J., dissents and votes to affirm in an opinion.

Judgment reversed, on the law and the facts, with costs to plaintiff, and matter remitted to County Court with directions to grant the petition for condemnation and enter an appropriate judgment thereon together with the right of temporary possession in accordance with the Condemnation Law. The appeal from the order of May 17, 1977 is dismissed as academic.