OPINION OF THE COURT
 

 Cooke, J.
 

 This case is another episode in the controversy over the supply of public utility services as between a municipal corporation and a privately owned public utility. We voice no policy preference but determine the rights of these parties under article 14-A of the General Municipal Law.
 

 The scenario is laid in the northern reaches of our State. The combatants are the Town of Massena in St. Lawrence County (Massena), a municipal corporation, and Niagara Mohawk Power Corporation (Niagara Mohawk), a stock corporation presently supplying electrical energy to the region. The encounter, officially initiated by the passage of certain town board resolutions in 1974, intensified in 1975 when Massena instituted this condemnation proceeding in the County Court of St. Lawrence County in respect to certain Niagara Mohawk property in the Town of Massena. The asserted purpose for the acquisition was to allow Massena to "own and operate its
 
 *487
 
 own electric distribution system and to supply electricity to the inhabitants” of the town. In opposition to this proceeding, Niagara Mohawk has unleashed a fusillade of legal objections.
 

 After Massena filed its petition for condemnation on March 14, 1975 and an amended petition and motion for temporary possession on January 15, 1976, Niagara Mohawk moved for dismissal. County Court entered an order denying dismissal, directing Niagara Mohawk to serve and file its answer and denying temporary possession to Massena, without prejudice to renewal after service of an answer (see 87 Misc 2d 79). After service of an answer to the petition and amended petition on June 11, 1976, denying most of the allegations of the pleadings to which it responded and setting forth 10 affirmative defenses, and subsequent to Massena’s renewal of its motion for temporary possession on July 19, 1976, a nonjury trial was held spanning a period of over two weeks in County Court. That court delineated the issues into six categories and decided all favorably to plaintiff Massena except it concluded that "plaintiff has materially departed from both the authorized plan of acquisition (i.e. construction)
 
 and
 
 its formerly proposed method of furnishing service to customers of the municipal utility.” Because of this ascribed digression, it was deemed that dismissal of the petition must ensue and, consequently, temporary possession was denied.
 

 In turn, a four-Justice majority in the Appellate Division viewed the determination that there had been a material deviation as being without support in the record and held that there had been substantial compliance by Massena with section 360 of the General Municipal Law (60 AD2d 139). By virtue of an order and amended order, the judgment of County Court was reversed on the law alone and the matter remitted with directions to grant the petition for condemnation by entry of an appropriate judgment together with the right of temporary possession. A single dissenter agreed that there had not been a material departure from the plan approved by referendum, but voted for affirmance on the base of noncompliance with subdivision 3 of section 360 which required that "the resolution submitted to the townspeople set forth 'both the maximum and the estimated costs’ of the proposed enterprise” (60 AD2d, at p 147).
 

 In this court, Niagara Mohawk’s array of reasons for dismissal can be distilled into four categories: first, that Massena’s method for furnishing public utility service varies from
 
 *488
 
 that described in the resolution of the town board and in the referendum submitted to the electors; second, that the resolution did not set forth "both the maximum and the estimated costs” of the project; third, that Massena failed to negotiate in good faith for the purchase of the property, a condition precedent to condemnation; and fourth, that Massena failed to obtain contracts for power supply and transmission, another such condition. Additionally, it is contended that the right of temporary possession should not have been granted. Massena counters with plethoric argumentation.
 

 First off, note must be taken of certain jurisdictional contentions raised by Massena. It is urged that Niagara Mohawk’s third and fourth hypotheses, the asserted failure to negotiate in good faith and to obtain contracts for power supply and transmission, may not be considered by this court. Massena’s reasoning is that Niagara Mohawk raised these points before County Court which specifically rejected them, and that Niagara Mohawk failed to cross-appeal to the Appellate Division from these findings; ergo, Niagara Mohawk, as appellant, has not preserved these objections. We reject this position. At trial level, Niagara Mohawk was the prevailing party and it secured the relief it sought, the dismissal of the petition. Although County Court rejected these arguments, the adjudicative provisions of the judgment made no mention of them and instead merely rendered a determination in favor of Niagara Mohawk. Thus, Niagara Mohawk was not aggrieved by the judgment and could not cross-appeal to the Appellate Division (CPLR 5511; see Cohen and Karger, Powers of the New York Court of Appeals, p 395). However; since Niagara Mohawk was entitled to raise these two points in the Appellate Division as alternative grounds for sustaining the County Court judgment, they were properly before the Appellate Division and are now before this court on the question certified (see
 
 Logan v Guggenheim,
 
 230 NY 19, 21-22; 10 CarmodyWait 2d, NY Prac, § 70:423, pp 693-695). Secondly, Massena’s assertion that all points raised by its adversary involve questions of fact, upon analysis, is only partially correct.
 

 The resolution adopted by the town board on April 16, 1974, as subsequently approved by the qualified electors of the Town of Massena at the mandatory referendum held on May 30, 1974, provided in part: "Section 3. The
 
 proposed method
 
 of providing such public utility service system is by the acquisition thereof from the Niagara Mohawk Power Corporation
 
 *489
 
 pursuant to condemnation proceedings to be instituted in conformance with law and the
 
 proposed method
 
 of constructing additions to such system, once it has been acquired,
 
 consists of the construction of a sub-station and transmission line,
 
 together with other related facilities incidental thereto, pursuant to contracts to be let in conformance with provisions of the General Municipal Law” (emphasis added). Unmistakably, the resolution "proposed” the "construction of a substation and transmission line”, but just as definitely, as appears from a filing by Massena with the Federal Power Commission (now the Federal Energy Regulatory Commission), it appears that Massena has abandoned this construction for the present and has decided to use existing Niagara Mohawk transmission and subtransmission facilities for the wheeling of power. Hence, we are obliged to analyze this "change” to ascertain whether it is such as to vitiate the entire project — a novel question under the statute of our State.
 

 Section 360 of the General Municipal Law, which confers powers upon municipal corporations to establish, own and operate certain public utility services, is the point from which our inquiry starts. Since subdivision 6 grants to such corporations the power to "acquire the public utility service of any public utility company * * * by condemnation in the manner provided by law for condemnation by such municipal corporation of private property for a public use”, it follows that compliance with 360 is a condition precedent to the right to condemn. The section does not expressly proscribe such a change in plan; neither does it manifest permission. In any event, the town board was required to "fix” by resolution "[t]he proposed method of constructing, leasing, purchasing, acquiring, the plant and facilities for such service together with both the maximum and the estimated costs thereof, and the method of furnishing such service” (subd 3).
 

 Although Niagara Mohawk’s contention that the section must be construed literally, thus requiring that the method as ultimately executed be identical with that detailed in the resolution, is perhaps tenable, very sound reasons dictate otherwise. In any instance when a municipal corporation endeavors to enter into the public utility field, necessarily a time gap occurs between drafting the initial outline and actual completion of the project. During this interval, usually not of short duration, several contingencies may suggest or
 
 *490
 
 even necessitate a change of direction: e.g., spiraling costs may render the undertaking economically unfeasible; technical developments may make the plans obsolete; and demographic shifts may require a revamping of the system. In view of these and other pragmatic considerations, flexibility in implementation of a section 360 project is obviously necessary. To adopt a narrow interpretation, therefore, might well destroy for practical purposes the very statutory scheme which the Legislature has seen fit to enact. Furthermore, since a project once implemented may be altered freely without referendum submission (see 2 Opns St Comp, 1946, p 582; 2 Opns St Comp, 1946, p 556;
 
 Illinois Power Co. v City of Jacksonville,
 
 18 111 2d 618), it would be absurd to insist on such strict adherence to the approved method.
 

 Niagara Mohawk now, but never previously, poses the proposition that the town board resolution, authorizing acquisition and construction "at a maximum estimated cost of $4,500,000”, was defective in not complying with the section 360 directive that "both the maximum and the estimated costs thereof’ be fixed (subd 3). The statute prescribes that the town’s power be exercised by resolution (see
 
 Meredith v Connally,
 
 68 Misc 2d 956, 961 [Casey, J.], affd 38 AD2d 385; see, also,
 
 Matter of Jewett v Luau-Nyack Corp.,
 
 31 NY2d 298, 303, 305-306). Such a resolution is clothed with a presumption of validity (cf.
 
 Lighthouse Shores v Town of Islip,
 
 41 NY2d 7, 11-12;
 
 Matter of Magnotta v Gerlach,
 
 301 NY 143, 149;
 
 O’Connor v Greene,
 
 174 Misc 597, 598-599). Words employed in the resolution will be construed according to their ordinary and plain meaning in the absence of a clear intent to the contrary expressed in the enactment (cf.
 
 Fifth Ave. Coach Co. v City of New York,
 
 194 NY 19, 26-27, affd 221 US 467; 62 CJS, Municipal Corporations, § 442, pp 843, 846), and we should make an effort to interpret the language so as to give effect to the resolution rather than destroy it (see
 
 Greenwood Volunteer Fire Co. v Dearden,
 
 64 RI 368). The plain and ordinary significance of the words "maximum estimated cost” followed by a single monetary figure is that the maximum and estimated costs are the same. The noun "cost” is modified by two adjectives, which separately qualify the subject which in turn relates to the object, a single sum. Neither modifier conflicts; in fact they coincide. It is the spirit rather than the letter of the resolution which determines its construction (cf.
 
 Effell Realty Corp. v City of New York,
 
 165 Misc 176, 179, affd 256
 
 *491
 
 App Div 972, affd 282 NY 541) and we should not exalt form over substance by holding that the town board was obliged to employ two separate sentences, one in respect to maximum costs and the other specifying the estimated, particularly when they can be united in a single statement with complete signification.
 

 The claim that Massena did not negotiate in good faith to purchase the property sought to be condemned, in substance a condition precedent to condemnation by virtue of subdivision 5 of section 4 of the Condemnation Law, was resolved against Niagara Mohawk by the County Court and the Appellate Division. The issue was essentially one of fact, involving Massena’s statements, conduct and intentions considered in the context of the property owner’s reactions. The Court of Appeals is the State’s highest tribunal to settle the law; it sits in an appellate capacity primarily to review every question of law properly before it (Siegel, New York Practice [1978], p 13; Cohen and Karger, Powers of the New York Court of Appeals, pp 7, 29). "In civil cases, the court is empowered to review the facts only when (1) the Appellate Division has reversed or modified (2) a final or interlocutory determination and (3) made new findings of fact and (4) a final determination 'pursuant thereto’ has been entered” (7 Weinstein-Korn-Miller, NY Civ Prac, par 5501.14; see NY Const, art VI, § 3, subd a; CPLR 5501, subd [b]). Since the reversal effected by the amended order of the Appellate Division was expressly "on the law alone”, with "no issue of fact * * * considered” by said court, it is obvious that new findings of fact were not made and it follows as a definite legal consequence that the basically factual question as to Massena’s inability to agree with the property owner for purchase may not be determined by or even advanced before this body.
 

 The contention, put forward without actual authority, that Massena has not satisfied a further condition precedent, in that it has not compacted for power supply, is without merit. In effect, it is maintained that Massena must arrange for its power supply before it can acquire title to the specified parts of Niagara Mohawk’s utility system. For this proposition, section 4 of the Condemnation Law is cited. However, the only possibly relevant portion of that section is subdivision 7 which provides that the petition set forth "[a] statement that it is the intention of the plaintiff, in good faith, to complete the work or improvement * * * and that all the preliminary
 
 *492
 
 steps required by law have been taken”. In this instance section 360 of the General Municipal Law traces "the preliminary steps required by law” and nowhere therein can be gleaned a requirement that Massena adduce evidence of commitments for power supply or any other such item. As County Court held, the proof that the Power Authority of the State of New York will provide very substantial amounts of power is sufficient to negate dismissal of the petition in this respect.
 

 Section 24 of the Condemnation Law recites that a court "may direct” that a plaintiff be permitted to enter upon the real property to be taken "[w]hen it appears to the satisfaction of the court * * * that the public interests will be prejudiced by delay”. By reason of its dismissal of the petition after trial, County Court denied such possession. Previously it had declared on motion that Massena had shown that the public interest will be served best by a grant. It was noted that prolongation might necessitate submission of another bond proposition due to inflationary factors and added value resulting from improvements made by Niagara Mohawk, to the extent "that any substantial delay may ultimately result in a loss of that which the plaintiff seeks — a municipally owned electric utility.” On appeal, the Appellate Division observed that the record revealed no basis for refusing possession. The direction that temporary possession be granted here was an "exercise of discretion”, obviously without abuse since it was buttressed by obvious and substantial justifications (Condemnation Law, § 24;
 
 City of Glen Cove v Utilities & Inds. Corp.,
 
 17 NY2d 205, 208). As such, the directive grant by the Appellate Division should not be disturbed.
 

 The order of the Appellate Division should be affirmed, with costs, and the question certified answered in the negative.
 

 Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
 

 Order affirmed, etc.