Jasen, J.
(dissenting). In my view, the order of the Appellate Division should be affirmed.
*208 The trial court found that the "corporate connections between Driscoll and Heilman-were sufficient to cloak Driscoll with apparent authority”. This finding of fact was affirmed by the Appellate Division. Nonetheless, the majority, rejecting this affirmed finding of fact, concludes that "a fine-tooth-combing of the record discloses no proof that Heilman delegated power to choose Greene or any other broker to negotiate the sale of his property.” Such a conclusion is reached by the majority only after reviewing the facts in the record and drawing inferences therefrom. This, we are unable to do. (NY Const, art VI, § 3.) The issue of whether Driscoll was cloaked with apparent authority is essentially one of fact. The finding by the court below that there was apparent authority, being affirmed by the Appellate Division, is beyond our review if there exists any factual support in the record for such a determination. (See, e.g., Town of Massena v Niagara Mohawk Power Corp., 45 NY2d 482, 491.) I believe that there is.
An examination of the record before us reveals that in June, 1974, defendants Heilman, Driscoll and Diamond held various positions in West Wayne Shopping Plaza, Inc., Todd Mart, Inc., and Montezuma Construction Company, Inc. Specifically, Heilman was the president of Todd Mart, Inc., and a vice-president in West Wayne Shopping Plaza, Inc., and the Montezuma Construction Company, Inc. Driscoll, on the other hand, was the president of West Wayne Shopping Plaza, Inc., and the Montezuma Construction Company, Inc., and a vice-president of Todd Mart, Inc. These companies had a variety of real estate holdings, one of which was the property involved in this appeal, the West Wayne Shopping Plaza.
In July, 1974, ownership of the West Wayne Shopping Plaza was transferred in a Sheriff’s sale pursuant to an execution issued on a judgment in favor of the Montezuma Construction Company, Inc., against West Wayne Shopping Plaza, Inc. For some unexplained reason, however, title to the West Wayne Shopping Plaza was recorded in the name of Heilman as an individual, rather than in the name of the judgment creditor, the Montezuma Construction Company, Inc.
Approximately three months later, in October or November, 1974, it is undisputed that plaintiff Greene, a real estate broker, was contacted by Driscoll on the telephone. Driscoll, who was known by Greene to be an officer of Todd Mart, Inc., notified Greene that the West Wayne Shopping Plaza, along with two other parcels of property purportedly owned by Todd *209 Mart, Inc., were being offered for sale. Driscoll also indicated to Greene that a 5% commission would be paid if a willing buyer for these properties could be procured. It is further undisputed that Driscoll then supplied Greene with financial statements relating to the West Wayne Shopping Plaza and the other properties allegedly being sold by Todd Mart, Inc. Shortly thereafter, Greene contacted Robert Gordon, president of I. Gordon Realty Corp., and informed Gordon of the availability of the West Wayne Shopping Plaza. Greene also sent Gordon the financial statements of the plaza, now stamped with Greene’s name, which had originally been sent to Greene by Driscoll.
Thus, Greene was the first person to introduce Gordon to the plaza. Gordon testified that he was interested in the property from the beginning — that is, from the time he obtained the statements from Greene — and that his interest continued to grow from the fall of 1974 through the spring of 1975. Gordon also stated that during this time he visited the plaza on several occasions. Testimony from Greene and Gordon further reveals that during this time Greene had a number of conversations with Gordon concerning the sale of the property. In addition, Greene testified that in late October, 1974 he informed Driscoll of Gordon’s interest in the plaza.
In the early spring of 1975, negotiations took place between Gordon, Heilman and Driscoll with an eye toward the eventual sale of the shopping plaza. Meetings, sometimes attended by all three individuals, were held at the offices of Todd Mart, Inc. Moreover, Gordon on occasion would bring to these meetings the financial statements which bore Greene’s name.
Throughout these negotiations, no mention was made of the actual ownership of the West Wayne Shopping Plaza. In fact, Gordon, like plaintiff Greene, believed that Todd Mart, Inc., was the actual owner of the plaza. Moreover, Gordon was not made aware of Heilman’s individual ownership of the plaza until just prior to preparation of the final purchase offer.
In April, 1975, Gordon submitted a written offer to Heilman to purchase the shopping plaza. The purchase offer contained a clause denominated "Broker’s Commission” which recited that "Alfred K. Greene” had supplied Gordon with financial statements and that any broker’s commissions on the sale should be paid by Heilman. On June 27, 1975, Heilman made a counteroffer in which he made various modifications to the original Gordon offer. Heilman’s counterproposal, however, *210 failed to delete the broker’s commission clause containing Greene’s name. Finally, on September 4, 1975, I. Gordon Realty Corp. purchased the shopping plaza. Thereafter, plaintiff Greene sought his 5% commission for securing Gordon as purchaser.
Based on the foregoing scenario, the trial court found that the "corporate connections between Driscoll and Heilman were sufficient to cloak Driscoll with apparent authority not only to manage but to sell such properties as the corporations in fact managed and controlled, and, such properties as the corporations owned — or — did formerly own.” I would agree.
As mentioned before, a finding of apparent authority essentially involves a factual determination. "[Wjhere [as here] no written authority of the agent has been proven, questions of agency and of its nature and scope and of ratification by or estoppel of the principal, if dependent upon contradictory evidence or evidence, though not contradictory or disputed, from which different inferences reasonably may be drawn, are questions of fact to be submitted to the jury upon proper instructions by the court.” (Hedeman v Fairbanks, Morse & Co., 286 NY 240, 248-249.) Therefore, in this action, tried without a jury, there was a factual basis upon which the trial court could find, as it did, that Driscoll was cloaked with apparent authority by Heilman to authorize the sale of the plaza. The majority at the Appellate Division agreed and affirmed.
The doctrine of apparent authority is an outgrowth of the equitable concept that "when one of two innocent persons must suffer from the act of a third person, he shall sustain the loss who has enabled the third person to do the injury.” (Walsh v Hartford Fire Ins. Co., 73 NY 5, 10.) So viewed, apparent authority can be expressed in terms of estoppel: "where a principal has, by its voluntary act, placed an agent in such a situation that a person of ordinary prudence conversant with business usages and the nature of the particular business is justified in assuming that such agent has authority to perform a particular act and deals with the agent upon that assumption, the principal is estopped as against such third person from denying the agent’s authority.” (2 NY Jur, Agency, § 92, p 256; see Restatement, Agency 2d, § 8; cf. Palmer, Law of Restitution, §§ 14.15 — 14.16.) Stated somewhat differently, apparent authority " 'implies a transaction itself invalid, and a person [the principal] who is forbidden for *211 equitable reasons to set up that invalidity.’ ” (Wen Kroy Realty Co. v Public Nat. Bank & Trust Co. of N. Y., 260 NY 84, 92.)
From the evidence presented at trial, it could be inferred that Heilman was aware of Driscoll’s activities in contacting Greene. Both Heilman and Driscoll were interlocked financially and as officers in a number of real estate management and development corporations, including the shopping plaza involved in this litigation. Moreover, as the president of Todd Mart, Inc., it is not unreasonable to conclude that Heilman was aware of the activities of Driscoll, a vice-president in the same corporation, in procuring Greene’s services in connection with the sale of the shopping plaza property. This conclusion is supported further by the fact that negotiations for the sale of the shopping plaza took place in the offices of Todd Mart, Inc., and were participated in by both Heilman and Driscoll. Finally, Heilman’s signature on the purchase agreement which recited Greene’s name under the broker’s clause is yet another indication that Heilman was aware that Greene had acted as procuring broker on the deal. Therefore, I simply cannot agree with the majority that "the record is barren of even a hint that Heilman * * * was aware of Driscoll’s dealings with Greene”.
The record in this case also supports the inference that Greene was justified in his reliance on Driscoll’s authority to manage and sell the plaza. Greene, like the ultimate purchaser Gordon, reasonably concluded that Todd Mart, Inc., was engaged in selling the property. Both the president and vice-president of that corporation were engaged in the solicitation and negotiations which led to the sale. Moreover, as mentioned earlier, meetings and negotiations regarding the sale took place at the offices of Todd Mart, Inc. Thus, it would appear that the major portion of activities leading up to the sale of the shopping plaza focused on Todd Mart, Inc., rather than on Heilman, the individual. Under these circumstances, can it be said, as a matter of law, that Greene’s reliance on Driscoll’s authority to enter into a real estate broker’s agreement was unjustified? I think not.
Given Heilman’s awareness of Driscoll’s activities and the justified, although mistaken, reliance on the part of Greene as to the true ownership of the property, the doctrine of apparent authority was properly invoked by the courts below to prevent Heilman from denying Driscoll’s authority to procure *212 a purchaser for the shopping plaza and enter into an agreement with Greene. Heilman fully participated in the transaction and has reaped the benefits of the sale. He should not now be able to avoid payment to Greene by seeking refuge in a network of corporations and claiming that he, as an individual, was not responsible for creating the appearance that Todd Mart, Inc., was selling the property and that Driscoll, its vice-president, was authorized to contract with Greene as broker to effectuate such a sale. It should be readily seen that the doctrine of apparent authority, with its underlying theory of estoppel, specifically precludes Heilman from denying Driscoll’s authority and actions.
Furthermore, I would agree with the Appellate Division that the record discloses sufficient evidence to support the finding that Greene was the procuring cause for the sale of the shopping plaza. As mentioned earlier, the purchaser Gordon testified that Greene was the first and only real estate broker to introduce him to the plaza. Gordon also stated that his interest in the property continued to develop from the time Greene supplied him with the financial statements until he eventually purchased the property. Moreover, the record indicates that during the fall of 1974 Greene had additional conversations with both Gordon and Driscoll concerning the sale of the plaza. Therefore, because there was sufficient evidence to link Greene’s activities with the ultimate purchase by Gordon, this court is without power to disturb such an affirmed finding of causation. (See, e.g., Town of Massena v Niagara Mohawk Power Corp., 45 NY2d 482, 491, supra.)
Finally, I cannot agree with the majority’s dismissal of Greene’s remaining claims against Heilman. The trial court, having sustained Greene’s contract action, dismissed his second cause of action in fraud and third cause of action in conspiracy because Greene was made whole by recovering under a contract theory. (See, e.g., Simon v Noma Elec. Corp., 293 NY 171, 177.) The majority, however, sustains the dismissal of these causes of action because, in its view, the record is devoid of any evidence linking Heilman with the fraud engaged in by Driscoll or of any support for the allegation that Heilman and Driscoll conspired to deprive Greene of his broker’s commissions.
While this conclusion logically coincides with the majority’s view of the record on the issue of apparent authority, it again involves a factual determination which, under the circum *213 stances of this case, this court is without power to make. As mentioned before, there is evidence in the record from which the trier of the fact could infer that Heilman was aware of and participated in Driscoll’s activities. Thus, the record could support a judgment against Heilman under a cause of action either in fraud or conspiracy. Therefore, as with the issue of apparent authority, a factual determination as to Greene’s claims in fraud and conspiracy is beyond this court’s power of review. (NY Const, art VI, § 3.)
Chief Judge Cooke and Judges Gabrielli, Wachtler and Meyer concur with Judge Fuchsberg; Judge Jasen dissents and votes to affirm in a separate opinion in which Judge Jones concurs.
Order reversed, etc.